MARY ANN COMANS *v.* IOLA TAPLEY ET AL.

[57 South. 567.]

1. JUDGMENT. *Recitals. Conclusiveness. Abatement and Revival. Final decree. Interlocutory decree.*

In the absence of evidence to the contrary a recital in a decree that a party was defendant in the suit is conclusive of that fact.

2. FINAL DECREE. *Interlocutory decree.*

An interlocutory decree is one made pending the cause, and before a final hearing on the merits. A final decree is one which disposes of the cause, either by sending it out of the court, before a hearing is had on the merits, or after a hearing on the merits decreeing either in favor of or against the prayer of the bill.

3. ABATEMENT AND REVIVAL. *Time for Revival.*

A decree in a suit to cancel a sale by a mortgagee in possession and a sale by him as administrator of the purchaser and for an accounting, which cancels the sale, orders an accounting, appoints a commissioner to take an accounting, and reserves other questions until the coming in of the report of the commissioner, is not a final decree from which an appeal should have been taken within the time limited by the statute, so that a failure to appeal would bar a right to revive the action after the death of the parties thereto, but was an interlocutory decree.

4. ON SUGGESTION OF ERROR. *Laches. Delay. Equity.*

Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the

same condition, it matters little whether one presses a right promptly or not, within the limits allowed by law, but when a party, knowing his rights, neglects to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay in such case becomes inequitable and operates as an estoppel against the assertion of the right.

5. EQUITY. *Stale claims.  Enforcement.*

A claim is stale in equity and will not be enforced where a bill is filed to amend and enforce a decree rendered forty years before and when it is doubtful whether the different parties affected can now obtain the evidence necessary to a fair presentation of the case on. their part, and when the land the subject of controversy has passed for value into the hands of an innocent third party, who had constructive, but no actual knowledge that such suit was pending and who was not in fact guilty of any negligence in not obtaining this knowledge, and where such innocent purchases would be greatly damaged without any powers in the courts to grant her any adequate compensation therefor, and where all of this would have been avoided, had reasonable diligence been exercised by complainants to bring the case to a final determination.

APPEAL from the chancery court of Hinds county.

HON. G. G. LYELL, Chancellor.

Bill by Mary Ann Comans et al. against Iola Tapley et al. to revive a suit.  From a decree denying relief, complainants appeal.

The facts are fully stated in the opinion of the court.

*Allen Thompson* and *Lamar Easterling* for appellant, filed an elaborate brief too long for publication, in which they contend that this case was a pending suit; that no statutes of limitations ran against its prosecution. that the decree rendered some forty years ago in the chancery court was not a final decree but an interlocutory decree and that Appellant was not guilty of such laches as would estop them from the prosecution of this suit. Citing *Repass* v. *Moore,* 30 *S. W. (Va.)* 458; *Cock* v. *Gilpin,* 1st Rob. (Va.) 28; *Rawlings* v. *Rawlings,* 75 Va.

76; *Germania Fire Ins. Co.* v. *John R. Francis,* 52, 465; Story Equity Pleading, 418; 19 Am. & Eng. (2 Ed.) 258; 21 Ky. L. Rep. 751; *Hemphill* v. *McLimins,* 24 Penn. St. 367; *King v. State Bank,* 13 Ark. 269; *Ballew* v. *Wilmont,* 5 Kan. Lr. 724; *Railroad v. Jenkins,* 103 Ill. 588; *Tucker* v. *Wilson,* 68 Miss. 683; *Mantel v. Specific Min. Co.,* 27 Montana 473; *Mill Co.* v. *Sugg,* 169, 130; *Rich* v. *Allender,* 26 S. E. 437; *Rowan* v. *Chenoworth,* 38 S. E. 544; *Shelton* v. *Armstead,* 7 Grat. 264; *Bacon* v. *Gordon,* 1 "C" 6, (Miss.) 49; *Allen* v. *Mandaville,* 4 "C" 397, Miss.; *Richard* v. *Scott,* 32 Am. D. 779; *Inhabitants* v. *Buson,* 52 Am. Dec. 618; *Smith* v. *Cunningham,* 30 So. 652; *Evans* v. *Sprengen,* 62 Am. D. 105; *Bonner* v. *Brondon,* 75 Am. D. 655; *Beasly* v. *Howell,* 117 Ala. 490, 22 So. 989; *Ingerson* v. *Lewis,* 51 Am. Dec. —; *Morrison* v. *Harding,* 81 Miss. 583, 33 So. 80; *Westbrooks* v. *Munger,* 61 Miss. 329; *Taylor* v. *Chickasaw* Co., 70 Miss. 87; *Hill* v. *Nash,* 73 Miss. 849.

*Green & Green,* for appellees, filed an elaborate brief too long for publication in which they contend that the original decree filed in this case was a final decree; that the statutes of limitations ran against its further prosecution and that appellants were guilty of such laches as should estop them from further prosecution of this suit. Section 3110, Code of 1906; Section 2669, Code of 1880; Section 2737, Code of 1892; Section 3097, Code of 1896; Section 3092, Code of 1906; *McKinley* v. *Irvine,* 13 Ala. 681; *Cochrane* v. *Miller,* 74 Ala. 51; *Adams* v. *Sayre,* 76 Ala. 509, 510, 517; *Story* v. *Hawkins,* 8 Dana (Ky.) 13; *Mills* v. *Hoag,* 31 Am. Dec. (N. Y.) 271; *Stovall* v. *Banks,* 10 Wall. 587; *Beebe* v. *Russell,* 19 How. U. S. 285; *Coithe* v. *Crane,* 1 Barb. Ch. 23; *Younkin* v. *Younkin,* 44 Neb. 729; *Royal* v. *Johnston,* 1 Rand. 421; *Dick* v. *Robinson,* 19 W. Va. 159; *Rhodes* v. *Williams,* 12 Nev. 20; *McGowan* v. *Bellamy,* 2 Bibb. 441; *Humphreys* v. *Stafford,* 71 Miss. 135; *Cocke's Adm'r* v. *Gilkin,* 1 Rob.

20; *Peterson* v. *Naun*, 83 N. C. 118; *Magee* v. *Magee*, 37 Miss. 138, 152; *Niles* v. *Davis*, 60 Miss. 750; *Nelson* v. *Ratliff*, 72 Miss. 656; *Ralph* v. *Prester*, 28 Miss. 744, 752; *Weir* v. *Field*, 67 Miss. 292; *Street* v. *Smith*, 85 Miss. 359; *Berkson* v. *Coen*, 71 Miss. 650; *Insurance Co.* v. *Francis*, 52 Id. 457; *Myer* v. *Whitfield*, 62 Id. 387; and *Kelley* v. *Harrison*, 69 Id., 856; *Tuler* v. *Brown*, 74 Miss. 774; *Garrett* v. *Ellis*, MS.; *Westbrook* v. *Hawkins*, 59 Miss. 499; 1 Greenlief's Evidence, (9 Ed.), sec. 45; Story's Eq. Pl., sec. 429-432, 3 Dan'l Ch. Pl. & Pr., page 1689-1694; *Tell* v. *Donahoe*, 230 Ill. 476, 82 N. E. 844; *Lancaster* v. *Snow*, 184 Ill. 534, 58 N. E. 813; *Martin* v. *Gilleylen*, 70 Miss. 324; *Keel* v. *Jones*, 93 Miss. 244; *Perkins* v. *Swank*, 43 Miss. 349; *Tucker* v. *Wilson*, 68 Miss. 693; *Dickerson* v. *Thomas*, 68 Miss. 156.

Argued orally by *Allen Thompson* and *Lamar Easterling*, for appellant, and by *M. Green*, for appellee.

WHITFIELD, C.

A statement of the facts of this case is necessary to an intelligent comprehension of the opinion of the court in deciding it. The facts which we deem it essential to state are as follows:

About the year 1842, one Norman Baldwin was the owner of a residence lot in South Jackson, on which he resided with his wife, Mary Ann, until about the year 1845, when he went West on a trading expedition. Before leaving, he carried his wife and children to Holmes county, and left them in the care of her people. Baldwin never returned, but died some time later in Texas, as his wife learned. About the year 1849 Mary Ann Baldwin, his widow, married Daniel Comans. Comans was afterwards appointed administrator of the estate of Baldwin, and instituted the proceedings in the original suit, which suit is, by the present bill, sought to be revived. Baldwin and his wife had three children, Nor-

manda, who married E. A. Smith, Mary Lavinia, who married John Byrne, and William B., who died a minor without issue. Comans, as administrator, filed a report in the probate court in 1858, exhibit A to the bill of revivor herein, in which he states that he took out letters of administration for the sole purpose of recovering the residence house and lot owned by Baldwin. On May 17, 1858, Comans filed a suit in the superior court of chancery against E. M. Avery and T. S. Tapley, the husband of Martha C. Tapley; and on December 2, 1858, an amended bill was filed, by which it seems certain new parties were introduced. The case was then transferred to the chancery court, first district, of Hinds county. The said case was submitted on bill, amended bill, answer, exhibits, and proofs, and was taken under advisement by the court, and at the May term, 1868, the court rendered a decree, which is as follows:

"This cause having been submitted on a former term, on bill, amended bill, exhibits, answers, and proofs, and the court now being sufficiently advised, and because it appearing that Norman Baldwin, deceased, in his lifetime was seized and possessed of a certain town lot in the city of Jackson, Mississippi, known at lot 13, south, and that on the 22d day of October, 1845, he borrowed from defendant Avery the sum of four hundred dollars, and executed his note for the same due 1st of April, 1846, and also a mortgage on said house and lot to secure the payment of said note, said mortgage being dated on the 22d of October, 1845; that said Baldwin went on a trading expedition to the states of Texas, Arkansas, and California, and during the time of his absence departed this life, leaving a wife, who afterwards married the plaintiff, Comans, and the children named in the bill in this cause, to-wit, Lavinia, William, and Normanda Baldwin, all of them minors, etc., represented by said Daniel Comans in said bill; that since the filing of said bill said Willie has died, and the said Lavinia

has married one John Burns, and the said Normanda has married one E. A. Smith, both of said husbands having been made parties by the amended bill; that during the absence of said Norman Baldwin said defendant Avery took possession of said land and lot, rented the same, received large sums for said rent, which he has appropriated, as he claims, to the payment of said note and mortgage, and that after the death of said Norman Baldwin the said Avery sold the said house and lot at public sale without authority of law, and without having administered on his estate and obtained authority to sell the same, and without having taken any steps to foreclose said mortgage, and that at said sale one Thos. A. Isler became purchaser, also that the amount received by said Avery for rent is alleged to have been sufficient to discharge the said note and mortgage, besides what he received from said sale from Thos. A. Isler; that said Isler afterwards died, and said Avery became his administrator, and as such under order of the probate court sold said lot and house to the defendant Martha C. Tapley. And it appearing to the court that the said sales made by the said Avery were null and void, they are therefore so declared, and the court doth order and adjudge and decree that the title to said house and lot, not having been divested by said sales by said Avery, remained in the said Norman Baldwin, and at his death vested in his said widow, now the wife of plaintiff, Comans, and his three children; the said Willie having died a minor, and since the original bill was filed, his interest having descended to his two sisters. It is therefore ordered, adjudged, and decreed that the said sales made by the said Avery are null and void, that the title to said house and lot is in the said widow and children of the said Norman Baldwin, and that an account shall be taken of all moneys received by the said Avery for rent of said house and lot at any and all times, and what was a reasonable rent for the same during

the time, how much was expended by him, and what was a reasonable amount to be expended in necessary repairs on said building, what sums were received by him from the sale of said house and lot, when made by him, what amount was due on said note and mortgage of said Norman Baldwin, due said Avery at the date of sale made by him of said house and lot to said Isler as stated in his answer; That George A. Smythe be appointed commissioner to take and state such account with all due and convenient speed, giving to the defendants or their solicitors of record notice of the time and place of taking said account, and that he report the same to the court; that in taking said account he may refer to the pleadings and proofs on file in this office, and call witnesses before him, and send up their testimony with his report, and all other questions are reserved until the coming in of said report.''

Smythe, the commissioner, took no steps toward making the account, and filed no report. It would seem that the late Judge Wharton, counsel for Comans, wrote him a letter on November 4, 1870, saying that he had previously written him that the case had been decided in favor of the heirs of Baldwin, and the court had appointed Mr. Smythe to state an account, etc.; but he did not know whether Mr. Smythe would take the account unless paid in advance. About this time, 1870, Comans seems to have been murdered. Nothing further is shown to have ever been done in the original suit, filed by Daniel Comans, administrator, from the date of the decree, May 1868, until the filing of this bill on the 29th day of December, 1908. In the meantime Commissioner Smythe died, and no other was appointed. In other words, neither the complainants nor the defendants in said original suit have taken any steps to bring that litigation to a close, from the date of the said decree, until the filing of this present bill of revivor. Mrs. Martha C. Tapley, recited by the decree to be a defendant, was

in possession of this property in 1858, when the original suit was filed, and continued in possession during the progress of the trial and until the time of her death in 1897, and after that her heirs at law continued in possession of said property until 1900, when the property was sold for division of the proceeds among said heirs, and was purchased by Mrs. S. S. Brame, and the said property was afterwards conveyed by Mrs. S. S. Brame by a special warranty deed, October 25, 1902, to Miss Iola Tapley, a daughter of Chas. P. Tapley, one of the parties to said partition suit, and a son of Mrs. Martha C. Tapley, defendant in the original suit here sought to be revived.

The only defense set up by the defendants is adverse possession and various other statutes of limitation. But there is nothing in any of the these contentions, unless the case is saved for them by adverse possession for the time required by law to confer title. The prayer of the bill in this present case is that said original suit be revived, a new commissioner appointed, and the cause proceeded with. The original decree, made at the May term, 1868, above set out in full, shows all the material facts as to the dealing with this property by Avery, and how Mrs. Martha C. Tapley came into possession. A most material part of the testimony in respect to the claim set up that the defendants had adverse possession is the testimony of Mrs. Comans, the wife of Daniel Comans, and the testimony of Mrs. Normanda Constanta Smith, in which they both positively testify that some twenty years before the taking of their depositions, which seem to have been done some time in May or June, 1910, Mr. Chas. P. Tapley, the son of Mrs. Martha C. Tapley, went from Jackson to the home of Mrs. Comans, who appears to have been about 86 years old at the time of the taking of the depositions, in Neshoba county, Mississippi, where she lived at the time of the taking of these depositions. It appears that Mrs.

Comans remained about five or six years in Holmes county with her people, and then went to this place in Neshoba county. It appears that this home of Mrs. Comans in Neshoba county was, at the time of the visit of Tapley, about twenty-five miles from any railroad. Mrs. Smith seems to have lived in Neshoba county, about one mile from her mother, Mrs. Comans. The testimony of Mrs. Comans and Mrs. Smith is to this effect: That Chas. P. Tapley and a Mr. Hatcher came to Mrs. Comans' house for the sole purpose of buying this property, and that Mr. Tapley told Mrs. Comans, that his (Tapley's) mother was a poor woman, and that his mother would give Mrs. Comans thirteen hundred dollars or fourteen hundred dollars for this property in Jackson, but that Mrs. Comans declined to take less than two thousand dollars, saying, however, that she would come over to Jackson before long to see about it; that Tapley left, and they never saw him or heard from him any more. They further testified that the sole business of Tapley at Mrs. Comans' house on that occasion, where he stayed just a little while, was to make this offer to buy this property. It is due to Tapley to state that he denies that he had any conversation with Mrs. Comans on the subject. He states that he and Mr. Reese Hatcher, a neighbor, did go to Neshoba county about 1872 or 1873; but he states that he did not go to see Mrs. Comans at all, and never had a conversation with her in his life. Hatcher is dead. Chas. P. Tapley further testifies that his mother was generally recognized as the owner, and that he never heard of any claim otherwise, except that Judge Wharton, who it will be remembered was the counsel for Comans in the original suit, said to a cousin of Tapley's Mr. Dick Hardy, in 1868, that he (Judge Wharton) could "take the property," and that this remark was repeated to his mother, but that he (Tapley) paid no attention to the remark.

The object of appellants in introducing the testimony of Mrs. Comans and Mrs. Smith was to show a permis-

sive holding and knowledge on the part of Mrs. Martha
C. Tapley that the property belonged to the Comans
heirs. In our view of the case, however, it does not be-
come material to discuss this testimony further. It is
merely stated as a part of the history of the case. We
regard this case as turning solely upon the answer to
the question whether the original suit filed by Daniel
Comans, in which the decree was rendered at the May
term, 1868, is still a pending suit. If it is a pending suit,
then, of course, no plea of adverse possession can avail,
and the possession, though continued from 1868· until
the institution of this suit in 1908, affords no protection
to the defendants. It is certainly a most extraordinary
fact that no steps were taken by either the complainants
or the defendants in this original suit for such an un-
usual length of time. But it was as much the duty of
the defendants as the duty of the complainants to have
that suit proceeded with and ended, and our only duty
is to declare the law governing the case, having nothing
to do with the consequences.

Courts cannot afford, on account of the hardships of
cases, to announce bad law. All persons are charged
with a knowledge of the law, and it was the duty of both
complainants and the defendants to have seen that this
litigation was prosecuted to a conclusion and definitely
terminated. Either party could have moved in the
cause, and set the machinery of law in action, and had
their respective rights determined, and all the equities
of the original cause, as to the debt to Avery, and
whether it was paid or overpaid, and as to the rents that
were collected, and as to the amounts necessarily ex-
pended in repairs and improvements, and as to any
sums that may have been paid by way of purchase
money definitely adjudicated, very soon after the decree
of May, 1868. It is the fault, not of the law, but of the
parties, that this was not done.

Coming, then, to the determining question in the case,
let us note what this decree did, and required to be done.

In the first place, it canceled the sales from Avery to Isler, and from Avery, administrator of Isler's estate, to Martha C. Tapley, and declared them to be null and void. In the second place, it declared an accounting between the parties essential to the proper settlement of the various equities existing between them. It directed the commissioner to take said account, covering all the equities which we have above mentioned, and to report its action to the court. In the third place, the court expressly in the decree reserved all the other questions until the coming in of the commissioner's report. In the fourth place, there was no decree for costs, a matter not in itself determinative, but to be noted carefuly. Mrs. Martha C. Tapley, in the settlement of the equities, would certainly have been entitled to be subrogated to the extent of the four hundred dollars due by Baldwin to Avery, and secured by the mortgage and the interest thereon, and she would also be entitled to the amount of any improvements made by her, and all taxes paid by her, and she would be liable to account for the amount of the rent of said property received by her, during the whole period of her possession. It is impossible to see how an intelligent final decree could have been rendered in the case until the coming in and consideration and settlement of the commissioner's report.

One point should just here be disposed of. It is earnestly insisted by appellees that Mrs. Martha C. Tapley never was a defendant to this original bill filed by Comans, and it is stated with earnestness that the answer denies under oath that she ever was such a party. So far as this last point is concerned, however, we have answer under oath expressly waived, and there is not a particle of testimony in the case to show that Mrs. Martha C. Tapley was not a party defendant to that suit. On the other hand, the said decree at the May term, 1868, expressly recites on its face that Mrs. Martha C. Tapley was a defendant. In the absence of evidence to

the contrary, this solemn recital in the decree is con-
clusive that she was a party defendant to that suit. In
the case of *Germania Fire Insurance Company* v. *Fran-
cis,* 52 Miss. 457, 24 Am. Rep. 674, it was expressly held
that a technical discontinuance of a suit, as known at
common law, has been abrogated by our statutes, and
does not here exist. We think that the principle an-
nounced in the case of *Tucker* v. *Wilson,* 68 Miss. 693,
9 South, 898, controls this case. That opinion was so
clear and directly in point, that we set it out in full. It
is as follows:

"The suit begun by the complainants in 1870 was not
abated by the death of the next friend by whom they
sued, nor by the fact that the complainants attained their
majority after suit brought. There was no necessity
for a bill of revivor. All that was required was for
them to appear in the suit as adults and prosecute it.
The paper exhibited by them as a bill of revivor was a
very proper mode of bringing to the notice of the court
their wish to appear in their own behalf as adults, and
continue the suit begun in their behalf by their next
friend, and it was fit that the defendants should be
aroused from their long sleep, be advised of the purpose
of complainants, and notified to answer the original bill,
as ordered by the supreme court. The suit has been a
pending suit all the time, as between the parties to it
certainly, and is to be proceeded with as if a long time
had not elapsed, and because of this no statute of limita-
tions is applicable, I Dan. Ch. Pl. & Pr. pp. 77, 78. The
sale of the land by the trustee, and its purchase by the
defendant, made no change in the rights of parties. Mrs.
Wilson, as a party, was bound to know that the blunder
by which case No. 636 was dismissed did not in any man-
ner affect the real case, No. 564, which was properly
before the supreme court, and was disposed of by it by
reversing the decree, overruling the demurrer, and re-
quiring an answer in forty days. If a stranger to the

record should claim to have been misled by the mandate sent out after the dismissal mentioned, she could not. The suit brought by the complainants in Union county, and which upon demurrer was dismissed without prejudice, and the action of ejectment they instituted and dismissed, had no effect whatever on this suit. These fruitless efforts show a want of a proper conception of the right course for the complainants to pursue for their advantage, but do not furnish a reason for precluding them from proceeding in the right way they now discovered and undertook to pursue. The case is to be proceeded with just as if the judgment of this court, rendered March 24, 1873, had been promptly certified to the chancery court of Lee county. Mrs. Wilson will be allowed to answer the original bill, as she might have done eighteen years ago. She might then have paid the costs of this court adjudged against her and codefendants, and have speeded the cause; but, having allowed it to remain in *statu quo* so long, she must now meet the case made by the bill.''

There was a lapse of time there of some eighteen years. Of course, length of time is immaterial, if it remains true that the suit has always been pending.

It is further earnestly contended in the very able brief of learned counsel for appellees, however, that the suit is not pending, because, as is said, the decree rendered in May, 1868, was a final decree, and not an interlocutory decree. The argument is that the decree was final in so far as it affected the title, and that the rest of the decree, appointing a commissioner and directing him to state an account as indicated above, so that the equities between the parties might be settled, as also indicated above, though admittedly interlocutory in its character, did not prevent an appeal from that part of the decree finally settling the title to the property. In other words, it is said that a decree may be in part final and in part interlocutory, and that in such case that

part which is final may be appealed from, and that the decree in this case as to title was final, and that part of the decree could have been appealed from, and hence this present bill is barred by the statute of limitations on that subject. We have given a most careful consideration to the authorities cited by the learned counsel on both sides touching this point. The best and clearest statement we have been able to find, is set out in sections 29 and 32 of volume 1 of Freeman on Judgments.

We quote a part of section 29 as follows:. "An interlocutory decree is one made 'pending the cause, and before a final hearing on the merits. A final decree is one which disposes of the cause, either by sending it out of the court before a hearing is had on the merits, or after a hearing on the merits, decreeing either in favor of or against the prayer of the bill.' But no order or decree which does not preclude further proceedings in the case in the court below should be considered final. A decree is interlocutory which makes no provision for costs, and in which the right is reserved to the parties to set the cause down for further direction not inconsistent with the decree already made; and so is a decree which contains a provision for a reference of certain matters, and that all further questions and directions be reserved until the coming in of the report of the referee. An order or decree *pro confesso* for an injunction restraining the use of an invention is interlocutory merely; but a decree dismissing a bill, or dissolving an injunction and passing definitely on all the essential points in issue, is final. Interlocutory decrees are entered under an infinite variety of circumstances, and the relief afforded corresponds in variety to the circumstances demanding it. It is therefore difficult, and perhaps impossible, to formulate any classification which will include every order or interlocutory judgment or decree. By far the greater number of those which are at all likely to be mistaken for final judgments or decrees fall within

the following classification: Those which, while they determine the rights of the parties, either in respect to the whole controversy or some branch of it, merely ascertain and settle something without which the court could not proceed to a final adjudication, and the settlement of which is obviously but preliminary to a final judgment or decree.''

We quote as follows from section 32: .''Instances of interlocutory decrees of the third class are very numerous. Thus if the suit is for the dissolution of a partnership, and for an accounting and a settlement of the partnership business and the division of its assets, the court may be required to determine whether any partnership existed, and, if so, whether it ought to be dissolved, and what were the respective interests of the several parties before the court therein. The determination of these questions, accompanied with a direction that an account be taken, will not be deemed a final adjudication, unless the decree is so complete that nothing remains to be done except to follow its directions. In suits for partition, the courts must determine the interests of the cotenants, and whether partition shall be made by a sale of the property, or otherwise; but it is not until the confirmation of the partition, whether by sale or allotment, that a final decree exists. A decree that parties account is another familiar instance of a determination preliminary to, but not constituting, a final judgment. A decree declaring that complainant is entitled to have lands sold to pay purchase money or a mortgage debt due him is not final, if a reference is ordered to escertain what sum remained unpaid. An action was commenced to enforce certain liens against real estate, and a judgment therein was entered, directing that a sale of the premises be made, and that from the proceeds a sum specified should be paid to discharge one of the liens, and that the plaintiff should be paid an additional sum, less the amount due from him to the defendant for

rent of the premises, and that a reference he had to ascertain the amount of such rent. An appeal was taken from this judgment. The appellate court, on motion to dismiss the appeal, considered that as the object of the action was to ascertain to whom the whole proceeds to be derived from a sale of the premises should belong, and as this could not be ascertained until it was known what amount ought to be deducted from the plaintiff's claim for rents, the judgment entered by the court below was not a final judgment. Obviously a decree of foreclosure cannot be final, if it neither determines the amount to be paid nor ascertains or describes the property to be sold, nor if it merely declares the amount due, without awarding to plaintiff the only relief to which he is entitled in the suit, to-wit, a direction or judgment that the property be sold and the proceeds applied to the satisfaction of the mortgage debt. While the question of costs can hardly be regarded as forming a distinct issue in the case, nor its reservation as necessarily preventing a final determination of the rights of the parties, yet in some states a judgment or decree, otherwise final, reserving this question, is treated as interlocutory.''

Another most admirable statement of the law on this subject is found in the very able opinion of Baldwin, Justice, in the case of *Cocke's Administrator* v. *Gilpin,* 40 Va. 20. In the course of that opinion, the court said: "It will be seen from an examination of the numerous decisions of this court on the subject of the finality of decrees, in reference to appeals, bills of review, etc., that they have all been founded upon the idea that a decree is not final unless the cause itself has been thereby terminated in the court below. Thus, though a decree decides upon the question of title, or otherwise settles the principles of the cause '(*Young* v. *Skipwith,* 2 Va. 300; *Grymes* v. *Pendleton,* 5 Va. 54; *McCall* v. *Peachy,* 5 Va. 55; *Bowyer* v. *Lewis,* 11 Va. 553), though it dis-

misses the plaintiff's bill as to one of two separate sub-
jects of controversy, and as to the other also determines
the right of the parties (*Templeman* v. *Steptoe*, 15 Va.
339), though a decree *nisi* directs that the tract of land
in the bill mentioned be surveyed and part thereof
allotted to the plaintiff, and that the defendant shall
execute to him a conveyance for such part, and pay the
costs of the suit (*Albridge* v. *Giles*, 13 Va. 136), though
the decree directs the defendant to pay to the plaintiff
hires to be ascertained by commissioners, and to deliver
up the property, to be sold by the commissioners, and
the proceeds applied to payment of the plaintiff's claim
and the costs of the suit, and the residue, if any, to be
paid to the defendant (*Mackey* v. *Bell*, 16 Va. 523),
though, at the suit of creditors against executors and
devisees, it empowers the executors to sell such of the
lands held by the devisees as, after application of the
testator's goods and credits, shall be necessary for the
payment of his debts (*Goodwin* v. *Miller*, 16 Va. 42),
though it awards to the plaintiff his principal money,
interest, and costs, if it directs, in the event of an un-
productive execution, that certain trust property shall
be delivered by the defendant to the marshal to be sold,
and the proceeds, after deducting a sum to be deposited
for another, to be applied to the satisfaction of the plain-
tiff (*Hill's Ex'r* v. *Fox's Adm'r*, 37 Va. 587), though in
a mortgage suit it forecloses the mortgage and directs
the sale of the property (*Fairfax* v. *Muse's Ex'rs*, 12
Va. 558; *Ellzey* v. *Lane's Ex'x*, 12 Va. 592; *Allen* v. *Bel-
ches*, 12 Va. 595), yet in all these cases the decree is only
interlocutory, if something yet remains to be done in the
cause, and so the parties are not put out of court." And,
at page 27, the court lays down this test: "For my own
part, I am aware of no proper criterion but this: Where
the further action of the court in the cause is necessary
to give completely the relief contemplated by the court,
there the decree upon which the question arises is to be

regarded, not as final, but interlocutory. I say the further action of the court in the cause to distinguish it from that action of the court which is common to both final and interlocutory decrees, to-wit, those measures which are necessary for the execution of a decree that has been pronounced, and which are properly to be regarded as adopted, not in, but beyond, the cause, and is founded on the decree itself, or mandate of the court, without respect, to the relief to which the party was previously entitled upon the merits of his case. Any other criterion than this seems to be liable to the objection of ambiguity or uncertainty.''

And this court held on the concrete case as follows (see syllabus, 40 Va. 20): ''In a suit by one partner against his copartner, for a settlement of the partnership accounts, and for a moiety of a tract of land purchased by the defendant in his own name, and paid for out of the partnership funds, a decree having been made declaring the land partnership property, and directing a settlement of the accounts, and the cause afterwards coming on to be further heard upon the report of the commissioner, the court decrees that the plaintiff pay to the defendant the sum of money appearing due by the report, and that the defendant thereupon convey to the plaintiff a moiety of the land; but if the plaintiff shall not, within six months from the date of the decree, pay the said money, that the marshal sell the moiety of the land, and out of the proceeds of sale, after defraying the expenses, pay to the defendant the money so decreed, and the residue, if any, to the plaintiff. And the court further decrees that the outstanding debts due to the firm be equally divided between the parties, and that the cost of the suit be equally borne by them. Held, this decree is interlocutory, and it may be reviewed upon an appeal, although there has been such lapse of time between the rendition of the decree and the appeal as would preclude it being reviewed if the decree was final.''

In the light of these decisions, applying the principles therein announced to the said original decree rendered at the May term, 1868, in the suit brought by Daniel Comans, administrator, we are clearly of the opinion that the said decree was not a final, but an interlocutory, decree only.

It follows, from these views, that the contentions of the learned counsel for the appellees cannot be sustained.

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the decree of the court below is reversed, and the cause remanded, to be proceeded with in accordance with the said opinion.

### ON SUGGESTION OF ERROR.

SMITH, J. We do not think this case is controlled by the case of *Goff* v. *Robins,* 33 Miss. 153, for the reason that in that case the decree which it was sought to revive, amend, and execute was a final decree, while here the decree which it is sought to amend and execute is an interlocutory decree. After a most thorough consideration, however, of this most extraordinary case, we are of the opinion that we erred in reversing the decree, of the court below, and that the same should be affirmed, on account of the inexcusable delay of appellants in proceeding to obtain the amendment and execution of the decree rendered May, 1868, coupled with the great hardship which would now result to an innocent party, should that decree be now enforced. The power of a court of equity to enforce the doctrine of laches, where the delay is for a period less than the time required by the statute of limitations, is not here involved, for the reason that the longest period of time prescribed by any statute of limitations has four times passed since this decree was rendered.

The doctrine of laches is founded principally upon the equity maxims ''He who seeks equity must do equity,'' ''He who comes into equity must come with clean hands,'' and ''The laws serve the vigilant, and not those who sleep over their rights.'' Its object is to exact of the complainant fair dealing with his adversary. According to Mr. Pomeroy, with whom we fully agree, this doctrine cannot be more concisely and accurately stated than in the language of Stiness, J., in *Chase* v. *Chase,* 20 R. I. 202, 37 Atl. 804: ''Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other part has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief.'' 1 Pomeroy's Equitable Remedies, sec. 21, and authorities there cited, particularly *Wilson* v. *Wilson,* 41 Or. 459, 69 Pac. 923; *Lindsey Petroleum Co.* v. *Hurd,* L. R. 5, P. C. 221; *Naddo* v. *Bardon,* 51 Fed. 493, 2 C. C. A. 335; *Ryason* v. *Dunten,* 164 Ind. 85, 73 N. E. 74; *Neppach* v. *Jones,* 20 Or. 491, 26 Pac. 569, 849, 23 Am. St. Rep. 145.

In *Wilson* v. *Wilson, supra,* 41 Or. 463, 69 Pac. 924, it was said: ''Several conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such

advantages they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive. . . . If, however, upon the other hand, it clearly appears that lapse of time has not in fact changed the conditions and relative position of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief, although a strict and unqualified application of the rule of limitations would seem to require it. Every case is governed chiefly by its own circumstances." In *Lindsey Petrolium Co.* v. *Hurd, supra,* the language of the court, at page 239, was as follows: "Now the doctrine of laches in courts of equity is not an arbitrary or a technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases, lapse of time and delay are most material. But in every case, if an argument against relief, which otherwise would be just, is founded upon mere delay, that delay, of course, not amounting to a bar by any staute of limitations, the validity of that defense must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy." In *Buckner and Stanton* v. *Calcote,*

28 Miss., at page 596, the court approved the statement by Lord Camden in *Smith* v. *Clay, Ambler,* 645, that: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, when the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced." As was said by the late Mr. Justice Brewer while on the circuit: "No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many." *Naddo* v. *Bardon,* 53 Fed. 493, 2 C. C. A. 335.

Now, let us see what the conditions are which combine to render the claim of appellants stale in equity. When the present bill was filed in the court below forty years had elapsed since the rendition of the decree which it is now sought to amend and enforce. It is doubtful whether the different parties can now obtain the evidence necessary to a fair presentation of the case on their part. If there be witnesses still living cognizant of the facts originally in dispute, their recollections thereof must now be so imperfect as to forbid the court from relying with confidence thereon. The land has now .

passed, for value, into the hands of an innocent third party, who had constructive, but no actual, knowledge that such a suit was pending, and who was not in fact guilty of any negligence in not obtaining this knowledge. Should this suit be now proceeded with, she will be very greatly damaged, without any power in this court to grant her any adequate compensation therefor. All of this would have been avoided, had appellants proceeded with reasonable diligence to bring this case to a final determination. Appellee is in no fault in the matter, for the reason that she was not a party to the cause until the filing of the present bill, and prior to that time knew nothing whatever of it. The conduct of the original parties thereto is consistent only with the theory that the matters in dispute had been settled, or the suit abandoned. We are not unmindful of the fact that in *Taylor* v. *Chickasaw County,* 70 Miss. 87, 12 South. 210, the claims allowed to be enforced were "very old;" but the views herein expressed are not in conflict with that case, for the reason that the other conditions which here combine with the lapse of time to render appellants' claim stale in equity did not in that case exist.

The suggestion of error is sustained, the judgment heretofore rendered is set aside, and the decree of the court below is affirmed.                          *Affirmed.*