**McGehee, C. J.,** and **Kyle, Arrington,** and **Ethridge, JJ.,** concur.

ARRINGTON *v.* MASONITE CORP.

Apr. 7, 1952.

No. 38272 (58 So. (2d) 10)

Lyle V. Corey, George M. Ethridge, Jr., Frank Clark, and W. M. Hutto, for appellant.

Welch, Cooper & Welch, C. Denton Gibbes and Green, Green & Cheney, for appellee.

## Alexander, J.

Appellant filed her bill to set aside certain deeds and other conveyances covering a tract of eighty acres to which she had procured a patent from the United States in 1904. The record title is in appellee, but the bill charged that she had never parted with title and that a purported deed from her to her paramour, one Dave Falconer, in 1905, was a forgery. The appellee filed its answer, and by cross-bill set up the defenses of laches and adverse possession. It acquired record title in December 1937. The chancellor upon extensive testimony dismissed the bill by a decree which did not set out the bases therefor. However, in his opinion upon the facts, he held that the deed to Dave Falconer was a forgery but that appellant was denied the right to prosecute her action because of laches. He also found therein that appellee's title by adverse possession was not clearly shown. There were other defendants who allegedly had acquired rights by mesne conveyances. None of these are for adjudication since by an agreed settlement they are no longer parties hereto. The appeal involves only Hannah Arrington and the Masonite Corporation.

Interesting questions have been raised in the assignment of errors involving the admission of testimony as to the disavowals of any title to the lands by Dave Falconer, who had died prior to the trial of the cause. Also involved is the nature and extent of the possession and occupancy of the land by appellee who acquired it nearly eleven years before the suit was brought. We pretermit discussion of these assignments except insofar as the facts there involved may be factors in adjudging the issue of laches.

Appellant lived on the land about five years, part of which time was spent under requirements for establishing residence in proving out the land as a homesteader. The rude cabin constructed thereon then burned and she went to live upon Falconer's land which lay about

three or four miles from her own. Thereafter, according to her testimony, she went "down there to plow, clean up split rails, tote logs. I had to go down there often." For fifteen years prior to bringing her action, she had not been on the lands. During the years after she had moved away there had been sporadic occasions when the lands were worked for short periods for turpentining, and timber cutting by others. It was of a character known as wild lands, and was not susceptible of profitable farming. Its only asset lay in its timber, the exact amount capable of development being unknown.

Although she testified that she paid the taxes thereon "up until nineteen something", other testimony was to the effect that such taxes were paid by her children. Her tax receipts were alleged by her to have been burned or lost. It nowhere appears that the lands were or had ever been assessed to her, although receipt for taxes for the year 1904 was issued to her. Receipts thereafter up to the year 1924 were issued to Falconer. Receipts thereafter were issued to the intermediate grantees, including appellee, during the respective periods of their purported ownership.

After the purchase from Falconer in 1925 by Dr. Hand, the latter cut some crossties thereon. After the sale in 1937 by Hand to Stanley, the latter cut about fifteen thousand feet of timber. After its acquisition by Masonite, it has cut timber of a value of $1,309.60. Appellant seeks to utilize this fact to rebut any contention that Masonite would be prejudiced by denial of its defense of laches, inasmuch as this amount is in excess of its purchase price. However, she does not sue to recover this amount as for a trespass but prays damages in the sum of five thousand dollars. In the implication that it may retain this timber or its proceeds, there is sought a refutation of any claim of prejudice by appellant through the device of a waiver of any demand for a refund. Yet, it must follow that if Masonite's title should fail, its liability for this amount would immediately arise.

After acquiring record title, Masonite had the tract surveyed and its corners marked by substantial concrete markers with metal plates indicating the section corners and stamped with its name. About three sides thereof, it blazed and painted trees along its boundaries and erected large signs with the inscription "Posted. Masonite Corp." Along the fourth or east side, such markers were not placed for the assigned reason that this was a boundary common to lands it already owned. These large signs were placed at intervals estimated variously at fifty yards, one hundred yards and "four to a quarter." Since its acquisition, Masonite has sent at intervals of about six weeks an inspector or supervisor to check the growth of the timber and to guard against possible trespassing. All these facts were sought to be availed of also under the defense of adverse possession. While relevant, and of no little force, we do not, as above stated, employ them except in adjudging the chancellor's finding of laches.

The doctrine of laches has been often discussed in our cases. Regardless of the result of the application in varying factual situations, the elements have been set out with clarity. Among such cases are Comans v. Tapley, 101 Miss. 203, 57 So. 567, and in numerous decisions down to Bailey v. Sayle, 206 Miss. 757, 40 So. (2d) 618. In the Comans case [101 Miss. 203, 57 So. 573], whose facts are concededly dissimilar, we held that the doctrine ought to have been applied "on account of the inexcusable delay * * * coupled with the great hardship which would now result to an innocent party". So that laches takes into account both the action of the purchaser and the nonaction of the owner. The latter case underscores the resultant prejudice to a party by the loss of evidence, without fault.

In support of her allegations of forgery of the purported deed from appellant to Dave Falconer, she introduced, over objections, testimony that Falconer had, some years after conveying the land, stated that he had had her

name forged to his deed. Although we feel free to intimate some lack of conviction that such statements made long after Falconer had parted with his alleged title were competent, we refer to this matter only in connection with the alleged prejudice resulting to appellee in being deprived of the testimony of such witness, who lived forty-one years after he is alleged to have procured such forgery and who died about two years prior to the filing of the suit. In the meantime, one Ledyard, who notarized this deed, had died, and his testimony was no longer available to supplement the presumption of regularity and verity in his acknowledgement. While appellee upon the legal issue of forgery must submit to any failure of proof providentially denied, yet upon the equitable defense of laches it is the very fact of such impotence which lends strength to this defense. We need not speculate as to what the testimony of such witnesses would have been. Only three persons knew of the execution of this deed, the appellant, Falconer and Ledyard. The testimony of appellant alone was available and uncontradicted, and the finding of forgery by the chancellor was thus supported. Thus, the legal title of Masonite was destroyed at its source. There remained only the equitable defenses of laches and adverse possession. Had these witnesses been present, the initial and controlling issue may have been decided adversely to appellant. We repeat that there is no need to assume what the nature of their testimony would have been. It was crucial, and its absence placed appellee without defense or reply to the testimony of the sole survivor. Nor need we imply that appellant, despite her age of seventy-nine and her emphasized illiteracy, had wilfully misrepresented a fact which had occurred forty-three years before. She was neither non compos mentis or non sui juris.

The case does not turn upon any failure of appellant to act promptly upon the discovery of fraud, although the admissions of Falconer were made to her daughters over two years before suit was brought; yet the death of

Falconer between the date of his admissions and the instituting of the action are not to be ignored upon the issue of laches.

The agreement of record, by virtue of which intermediate lessees and warrantors were dismissed as parties, eliminates any occasion to consider whether their changes of position and expenses incurred may have availed them of this defense. Such agreement removes from consideration their rights inter sese and against appellant, but is not thereby obscured as a factor in the overall picture which reflects an utter failure in appellant of both interest in or supervision over the lands, title to which she now with an aroused zeal asserts.

Inherent in laches is the consideration of what loss or prejudice may have been avoided by that degree of oversight or supervision which an interested and prudent owner of land would exercise over his property. We disavow any implied recession from our prior holdings that title may not be divested by mere abandonment. But laches implies neglect whereby innocent third persons may be misled to their own hurt.

The learned chancellor found that laches was shown and that prejudice had resulted to appellee thereby. It is not necessary to fortify his findings by examining whether an alleged appreciation in the value of the lands had contributed to such prejudice. The finding of laches is usually a matter in the discretion of the chancellor and is governed by the facts and circumstances of each case. Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257, 9 So. (2d) 643.

The record herein is voluminous and the briefs cover with thoroughness and displayed learning all phases of the case. We find no substantial bases upon which we may find that the conclusion of the chancellor is manifestly wrong, upon either the law or the facts.

Affirmed.

**McGehee, C. J.,** and **Hall, Kyle** and **Holmes, JJ.,** concur.