Ancel Morgan, Flora Morgan Dunaway, Elma Morgan Sibley, Laverne Morgan Dunaway, Harold Morgan and Vonceil Morgan Williams brought suit in the Chancery Court of Marion County against Wallace Morgan and Getty Oil Company to cancel a quitclaim deed from E.D. Morgan to Wallace Morgan as a forgery; and to cancel all claims of title or interest asserted by either of the defendants under the instrument.
The trial court, following a full hearing, found the deed to be a forgery and cancelled it. However, the interest or right obtained by Skelly Oil Company (now Getty Oil Company) was not invalidated since the court found the complainants were estopped from establishing a superior title or right because of laches. Aggrieved, the complainants appeal.
E.D. Morgan, who was predeceased by his wife, died intestate January 8, 1967, leaving nine children, six of whom are the appellants and a seventh, is the appellee, Wallace Morgan. Two of E.D. Morgan's children did not participate in the lawsuit.
On June 13, 1947, E.D. Morgan conveyed to Wallace Morgan, by warranty deed the NE 1/4 of the NW 1/4 of Section 16, Township 4 North, Range 13 East, Marion County, Mississippi, subject to an existing oil, gas and mineral lease on 1/2 of the minerals and less 1/2 of the minerals previously transferred. The deed conveyed to Wallace Morgan the surface and an undivided 1/4th mineral interest there being reserved to the grantor a 1/4th mineral interest. This suit concerns the 1/4th mineral interest reserved by E.D. Morgan, the grantor.
On May 3, 1966, Wallace Morgan filed for record a deed which on its face conveyed from E.D. Morgan to him the NE 1/4 of the NW 1/4 of Section 16, Township 4 North, Range 13 East of Marion County. Thereafter Wallace Morgan executed an oil, gas and mineral lease to Skelly Oil Company to the interest purportedly received by him through the May 3, 1966 quitclaim deed, such lease being recorded in the clerk's office on December 13, 1971.
The chancellor found the May 3, 1966 quitclaim deed was a forgery and this determination is not questioned on appeal. Rather, the sole issue is whether the chancellor erred in estopping the appellants from asserting their claim against Getty Oil Company as to the oil, gas and mineral rights it acquired through the mineral lease executed by Wallace Morgan.
Appellants initially argue the 1966 deed to Wallace Morgan was a forgery, was void at its inception, and was therefore ineffective to pass any interest to Skelly.
Undoubtedly the rule in this state is that a deed, void because of forgery, does not operate to pass title. Nevertheless, this does not inevitably preclude an estoppel from being interposed to a claimant to the interest acquired through the void instrument if the facts warrant such because of laches. Continental OilCompany v. Walker, 238 Miss. 21, 117 So.2d 333 (1960),Arrington v. Masonite Corp., 213 Miss. 817, 58 So.2d 10 (1952).
In Sample v. Romine, 193 Miss. 706, 732-33, 8 So.2d 257, 263 (1942), we stated: *Page 1121 
 [L]aches, in a legal sense, is not merely delay, but delay that results in injustice or disadvantage to another. Time is only one element. There must be some other element than mere passage of time, some element of estoppel or change in conditions or relations of the parties, or intervention of rights of third persons, so that it would be inequitable to permit the party to then assert his rights. There is no absolute rule as to what constitutes laches or staleness of demand. Each case must be determined under its own peculiar circumstances. Too, the question of laches is largely addressed to the sound discretion of the Chancellor, and his decision will not be disturbed on appeal unless it is clearly wrong and amounts to an abuse of discretion.
The evidence establishes that five of the six appellants had actual knowledge either in 1966 or within a few years thereafter that Wallace Morgan, their brother, had acquired the 1966 deed from their father, who was then a patient in a nursing home and, of course, constructive notice was imputed to them when the deed was recorded on May 3, 1966. Additionally all of the appellants testified that when Wallace Morgan acquired the deed in 1966, their father, E.D. Morgan, was physically and mentally unable to sign a deed.
Thereafter, three of the appellants sought the assistance of counsel to have the deed set aside because of E.D. Morgan's mental condition but the lawyer advised against it, stating it was a family matter. In 1968 one of the appellants talked to a second lawyer who said that something could be done, but appellants chose not to pursue the matter.
Elma Morgan Sibley stated in her deposition, part of which was read into the record, "I told Ancel [a brother] then, I said, Ancel if they ever drill down yonder I'm going to see if we can't tear into that, and he said, well, we'll see. But until they drill down there, it wasn't no use to cause a big feud for nothing. If you are going to have a feud, try to have something to have it over."
The testimony on Getty's behalf established that Skelly, its predecessor, had acquired and recorded the oil, gas and mineral lease in 1971 from Wallace Morgan. The records were searched leading Skelly to believe the lessor owned a 1/2 mineral interest in the property and title opinions of their attorneys reinforced this conclusion. Thereafter public notices were twice published in three newspapers circulated in the area giving notice of the formation of a drilling unit in 1979 which affected the area. Subsequently, January 3, 1980, the drilling site was staked and beginning February 1, 1980, a road was constructed to the site and drilling operations were begun February 25, 1980. There is nothing to indicate that Getty had any knowledge from the time of its acquisition of the mineral interest until after the well was completed and producing gas that there existed any claim or question as to the validity of the 1966 deed.
The evidence also makes known that at least one of the appellants knew in 1972 or 1973 that Wallace Morgan had executed the mineral lease to Skelly and four of the other appellants either knew or had every reason to know of the Getty/Morgan well prior to its completion because over 50 18-wheeler trucks were used to transport the casing for the well through the small community of their residence. Moreover the drilling rig, which had a height of 145 feet, was visible to the appellants who lived in the area. There was also testimony that a niece of the appellants worked in the chancery clerk's office and had knowledge of the recording of the 1971 mineral lease.
When asked why he never notified Getty Oil Company that the lease from Wallace Morgan was not good, Ancel Morgan, who had knowledge of it, answered, "It wasn't my business. That wasn't a thing in the world to me then."
A landman with Getty Oil, testified that had they had such notice they would have attempted to acquire protection leases or a ratification. He stated that if the lease is cancelled Getty Oil will lose 8.8 net acres with a value of $125,000, the bonus and *Page 1122 
delay rentals paid, in the sum of $340.00, the cost of the well, evidenced to be $3,000,000, the cost of integrating the unit and their 7/8ths working interest.
Appellants contend they should not be estopped by laches to assert their claim because they did not know of the forgery until June 20, 1980, when Wallace, the grantee, admitted to Ancel, his brother, that he had forged the deed from his father, after which appellants promptly brought suit. They rely upon Denkmann LumberCo. v. Morgan, 219 Miss. 692, 717, 69 So.2d 802, 814 (1954), wherein it states, "laches cannot be imputed to one who has the right to relief, until he discovers the fraud or mistake on which the claim for relief is based, or if he moves within a reasonable time after the discovery."
The trial court found that E.D. Morgan's physical and mental condition, known to the complainants, was such that he was incapable of executing the 1966 deed. From this the court concluded the complainants had the responsibility to investigate the possibility of forgery to preclude injury to others, that their failure to do so until the well was drilled and gas discovered caused great financial loss to Getty, and, because of their unreasonable delay in making their claims known, they were estopped by laches to assert their claim. We are unable to state the trial court was manifestly wrong in its finding of fact or erred in its conclusions therefrom.
Appellants contend, however, that laches may not be used to bar a claim while the statute of limitations is running citingSojourner v. Sojourner, 247 Miss. 342, 153 So.2d 803,suggestion of error overruled, 247 Miss. 342, 156 So.2d 579 (1963), which states in part as follows:
 The Court called for answer to appellee's suggestion of error. After carefully reconsidering the arguments of appellee we are of the opinion that the suggestion of error should be overruled, however, that said in our original opinion concerning the doctrine of estoppel by laches should be clarified.
 We said that no period of time short of the statute of limitations can be used as supporting any laches which will constitute an equitable bar to the suit, citing Waldrop v. Whittington, 213 Miss. 567, 57 So.2d 298. Appellee correctly points out that the rule just stated applies only when time is the only factor.
 247 Miss. at 357, 156 So.2d at 580.
From the court's opinion it is obvious that consideration was given to other factors in addition to the element of time. The appellants argue that even if the appellants delayed in filing this action, the delay alone, without resulting injury or damage to Getty is insufficient to establish laches. In support of this theme they maintain Getty has failed to prove any resulting damages to it because the well is capable of producing 8,800,000 cubic feet of gas per day and if the well produces 6,000,000 cubic feet of gas per day for five months Getty will recover all sums it has expended. Getty contends in response there is no assurance the well will continue producing, and because of the financial risk involved in drilling, they will not be made whole by recovering only their out of pocket drilling expenses and other incidental costs related thereto.
The trial court found that Getty would suffer financial loss and harm if appellants were not estopped from asserting their claim and, in our opinion, the record amply supports this finding of the court. As stated in Arrington, supra, "Inherent in laches is the consideration of what loss or prejudice may have been avoided by that degree of oversight or supervision which an interested and prudent owner of land would exercise over his property." 213 Miss. at 825, 58 So.2d at 13.
In our opinion the trial court did not err in concluding the appellants were estopped to assert their claim against Getty because there were ample facts to support its finding that they were guilty of laches. We therefore affirm.
AFFIRMED. *Page 1123 
WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
BROOM, P.J., and DAN M. LEE, J., not participating.