627 So.2d 810 (1993)
DEPARTMENT OF HUMAN SERVICES, State of Mississippi
v.
Jerome JONES. Department of Human Services, State of Mississippi and City and County of San Francisco, on Behalf of Swahilli L. Waller
v.
Richard L. Jones.
Nos. 92-CA-0577, 92-CA-0578.
Supreme Court of Mississippi.
November 24, 1993.
Chester Ray Jones, Brandon, Joel R. Jones, Raymond, for appellant.
Joel Ainsworth Hunter, Rolling Fork, for appellee Jerome Jones.
Charles H. Weissinger, Jr., Rolling Fork, for appellee Richard L. Jones.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
In each of these two consolidated cases appealed from the Issaquena County Chancery Court, the Mississippi Department of Human Services ("DHS") attempted to establish paternity and secure child support on behalf of a minor child.[1] The chancellor *811 denied DHS's motions for an order compelling the putative father (the defendant) to submit to a blood (and genetic) test. The chancellor denied the motions because DHS presented them in an untimely manner (i.e., on the day of the trial). The trials proceeded without the aid of blood-test results and concluded with a finding that DHS failed to prove paternity by a preponderance of the evidence.
DHS appealed and presented various issues for this Court's analysis. Only one issue  common to both cases  warrants a published analysis:

Whether the chancellor abused his discretion in denying DHS's motion for an order compelling the putative father to submit to a blood test?

II. ANALYSIS
Pursuant to Miss. Code Ann. § 93-9-21 (Supp. 1992), a chancellor may  on his or her own motion in response to a motion of a party  order the mother, child, and putative father to submit to a blood test. Deer v. State Dep't of Public Welfare, 518 So.2d 649, 651 (Miss. 1988) ("[T]he ordering of the blood tests is ... discretionary, rather than mandatory.").
On appeal, this Court "may reverse ... where [the chancellor] has abused that discretion in ordering, or refusing to order, the blood tests." Deer, 518 So.2d at 651.

A.
DHS contends that the chancellor's refusal "to order the blood tests as the statute requires, is an abuse of ... discretion." The basis of DHS's contentions  that the "statute requires" a chancellor to order a blood test  reflects a misunderstanding of in an existing statutory and case law. Presumably, DHS relied on "old" statutory law which provided for mandatory blood testing. The legislature amended this "old" law in 1986  empowering the chancellor with the discretion to decide whether blood tests should be ordered. Compare Miss. Code Ann. § 93-9-21 (Supp. 1986), Miss. Code Ann. § 93-9-21 (Supp. 1987); see also Deer, 518 So.2d at 659 (providing an historical analysis of § 93-9-21 and noting that "the ordering of ... blood tests is ... discretionary, rather than mandatory").
DHS's misunderstanding notwithstanding, an order compelling the putative father to submit to a blood test is critical to the establishment of paternity and securement of child support. Such an order is consistent with inflexible public policy which dictates that protection of a child's best interests is a goal of utmost import in any judicial proceeding. This public policy is reflected in this State's statutory law. See, e.g., Miss. Code Ann. §§ 93-9-1 to 93-9-75 (1972 & Supp. 1992) ("Mississippi Uniform Law on Paternity"); Miss. Code Ann. §§ 93-11-1 to XX-XX-XXX (1972 & Supp. 1992) ("Uniform Reciprocal Enforcement of Support Law of Mississippi"); Miss. Code Ann. §§ 93-12-1 to 93-12-21 (Supp. 1992) ("Enforcement of Child Support Orders from Foreign Jurisdictions"); see also Miss. H.B. No. 305 (1993) (amending "Uniform Reciprocal Enforcement of Support Law of Mississippi" and "Enforcement of Child Support Orders from Foreign Jurisdictions").

B.
With the foregoing analysis of law and public policy in mind, this Court concludes *812 that the children's best interests would have been protected if the chancellor had granted DHS's motions for blood tests. This Court reaches this conclusion while recognizing DHS's admitted failure to file its motions in a timely manner. Once the defendant filed an answer denying paternity, the DHS's attorney should have timely sought a hearing on this motion for blood tests before seeking a trial setting. This would have aided the court in promoting judicial efficiency. However, neither the chancellor nor the defendant in either case cited any prejudice to either party which would have resulted if DHS's motions had been granted. Under the facts of each of these two cases, protection of the children's best interests as expressed in this state's policy statutes must override any concern over timeliness.

III. CONCLUSION
This Court holds that the chancellor's denial of DHS's motions for orders compelling the putative fathers to submit to blood tests constituted an abuse of discretion. These cases are therefore reversed and remanded for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by BANKS, J.
McRAE, Justice, dissenting:
Because the Department of Human Services is subject to the same rules of discovery as any other litigant in a civil case, I disagree with the majority's finding that the chancellor erred in denying the agency's untimely motions to compel further discovery. Accordingly, I dissent.
In both paternity cases at bar, the Department of Human Services waited until the "eleventh hour" to file motions for orders compelling the putative fathers to submit to blood tests. A complaint had been filed against Jerome Jones on April 8, 1991, and against Richard Jones on September 12, 1991. Their hearings were originally scheduled for December 4, 1991. They were rescheduled for April 4, 1992, at which time DHS finally requested that the putative fathers be subjected to genetic testing. Waiting until the day of trial to file the motion shows either disregard for the rules or incompetence. Neither is acceptable. The chancellor properly denied the motions as untimely. Generally, we will not disturb a chancellor's decision "unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Crow v. Crow, 622 So.2d 1226, 1228 (Miss. 1993). The chancellor correctly applied our rules of procedure and contrary to the majority's finding, did not abuse his discretion in denying DHS's motion.
Equal protection applies to all litigants, public and private. However, the majority's opinion affords special privileges to DHS not available to other parties or litigants. Our rules of procedure, except where specified by statute, apply to DHS and other agencies just as they do to any other litigants. We should not establish policies to the contrary.
To affirm the chancellor's decision would only serve to prevent DHS from collecting any money from the putative fathers. It does not preclude the children from bringing cases to establish paternity at a later date.
The majority's finding that the chancellor abused his discretion in following our rules of procedure and decisions interpreting those rules suggests that DHS is special. I think not. If the test was so important as to warrant a finding of abuse of discretion, DHS should have exercised some discretion itself during the proper time frame for discovery and filed a motion. It provides no excuse for not doing so. A litigant chooses his strategy for discovery and presentation of evidence. Our job is not to play lawyer. It is manifestly clear to me that, had the majority ruled otherwise, in the future, DHS might request a blood test at the time a complaint is filed or otherwise within the proper discovery period. Accordingly, I dissent.
BANKS, J., joins this opinion.
NOTES
[1] Pursuant to Miss. Code Ann. § 43-19-31 (1972):

[DHS] is ... authorized and empowered to establish a single and separate child support unit .. .
(a) [t]o develop and implement a nonsupport and paternity program and institute proceedings in the name of the state department of public welfare or in the name of the recipient in any court of competent jurisdiction in any county where the mother of the child resides or is found, in the county where the father resides or is found, or in the county where the child resides or is found;
(b) [t]o secure support and establish paternity for any child or children receiving aid from the department, from a parent or any other person legally liable for such support who has either failed or refused to provide support, deserted, neglected or abandoned the child or children, including initiating support and paternity actions under the Uniform Reciprocal Enforcement of Support Law and cooperating with other states in establishing paternity, locating absent parents and securing compliance with court orders for support of aid to dependent children;
(c) [t]o initiate support or paternity actions in behalf of nonrelated aid to dependent children families upon payment of a fee to be prescribed by the state department of public welfare and the subsequent payment of all costs assessed by the court; and
(d) [t]o initiate contempt of court proceedings or any other remedial proceedings necessary to enforce any order or decree of court relating to child support.
See also id. §§ 43-19-35 & 93-9-1 to 93-9-75 (1972 & Supp. 1992).