644 So.2d 1230 (1994)
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
v.
Charles Lonnie MOLDEN.
No. 93-CA-00395.
Supreme Court of Mississippi.
October 27, 1994.
*1231 Janice M. Broadus, Pascagoula, for appellant.
Karl R. Steinberger, Colingo Williams Heidelberg, Steinberger & McElhaney, Pascagoula, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr., and SMITH, JJ.
SMITH, Justice, for the Court:
The Department of Human Services (DHS) appeals from the Jackson County Chancery Court wherein the Petition to Determine Paternity that the agency filed against Charles Lonnie Molden was dismissed by the court with prejudice on grounds of laches. A prior complaint filed by DHS twelve years earlier had been dismissed without prejudice. The court reasoned that the lapse of time between the two suits made it difficult for Molden because witnesses were no longer available.
DHS raises the following issues on appeal:
I. WHETHER THE CHANCERY COURT ERRED IN DISMISSING THE PATERNITY ACTION ON THE GROUNDS OF LACHES BECAUSE A SPECIFIC STATUTE OF LIMITATIONS CONTROLS THE TIME IN WHICH SUIT CAN BE BROUGHT AND LACHES SHOULD NOT APPLY?
II. IF LACHES APPLIES TO THE ACTION, WHETHER THE CHANCERY COURT ERRED IN DISMISSING THE PATERNITY COMPLAINT ON THAT GROUND WHEN THE DEFENDANT FAILED TO MEET THE BURDEN OF PROVING THAT THE ALLEGED DELAY IN FILING CAUSED UNDUE PREJUDICE?
This Court has held that the doctrine of laches does not apply when a claim has not been barred by the statute of limitations, which is the case before us today. This is a case of first impression as there are no Mississippi cases applying this principle to paternity cases. Other jurisdictions, however have applied this principle in paternity actions. Courts in other jurisdictions have reasoned that a contrary result would subvert the legislative intent to have parents take responsibility for their children and to lessen the burden of the public welfare system.
Even if the doctrine of laches applied, there was an insufficient showing by Molden who argues that "lost evidence" justifies this dismissal. Molden's "lost evidence" consisted of proposed witnesses no longer available, but such position is distinguishable and does not establish undue prejudice. We agree with DHS. This case is reversed and remanded.

THE FACTS
Carlos Marion was born on April 27, 1978. His mother, Brenda, a single parent, applied for assistance from the Department of Welfare. Brenda named Charles Molden as the father of Carlos and another child, Latora Marion, born March 30, 1976. Brenda also had another child, Kevin R. Marion, born November 4, 1973, whose putative father was Calvin Collins.
*1232 On September 13, 1978, the State Department of Public Welfare filed an amended petition to establish paternity of Carlos and Latora in the Chancery Court of Jackson County. An earlier petition had sought to establish the paternity of Latora only. Molden filed a motion for blood tests on November 6, 1978, and the court ordered the tests the same day.
Molden's attorney provided by letter a summary of the testimony of defense witnesses. The summary indicates that Molden admitted that Brenda had at one time been his mistress but that he had broken off the relationship prior to the time Carlos was conceived. Other witnesses would have testified that Brenda had sexual relations with other men during this time.
Molden admitted the paternity of Latora and was ordered to pay support. The petition as it pertained to Carlos was dismissed without prejudice on November 13, 1978.
Brenda, later through a private attorney, filed a petition for proof of paternity on June 25, 1980, seeking to establish Molden as Carlos' father. Molden filed an answer, but the case was dismissed for lack of prosecution by order dated October 29, 1981.
The complaint to determine paternity and for other relief that is the subject of this present appeal was filed on May 11, 1990.
Molden filed a motion to dismiss on August 20, 1990. The trial court found meritorious Molden's argument "that the lapse of twelve years between the original and third filing has made it impossible to present his defense." A judgment of Dismissal with Prejudice was entered on August 26, 1992. This appeal followed.

DISCUSSION

I. WHETHER THE CHANCERY COURT ERRED IN DISMISSING THE PATERNITY ACTION ON THE GROUNDS OF LACHES BECAUSE A SPECIFIC STATUTE OF LIMITATIONS CONTROLS THE TIME IN WHICH SUIT CAN BE BROUGHT AND LACHES SHOULD NOT APPLY?
Determining whether error was committed by the chancellor in dismissing this cause of action utilizing the doctrine of laches entails the matter of conducting an examination of the appropriate statute and case law. Miss. Code Ann. § 93-9-9 (Supp. 1990), provides as follows:
Paternity may be determined upon the petition of the mother, the child, or any public authority chargeable by law with the support of the child; ... However, proceedings hereunder shall not be instituted after the child has reached the age of eighteen (18) years.
The Mississippi Department of Human Services is a subdivision of the State of Mississippi pursuant to Miss. Code Ann. § 43-1-2 (Supp. 1992).
This Court has held that "[t]he doctrine of laches is simply inapplicable where a claim has not yet been barred by the applicable statute of limitations." Greenlee v. Mitchell, 607 So.2d 97, 111 (Miss. 1992), citing West End Corp. v. Royals, 450 So.2d 420, 425 (Miss. 1984).
Molden relies on the proposition that Miss Const. Art. 4, § 104 (1890), prohibits application of a statute of limitations against the State. As a consequence, Molden argues that the equitable principle of laches may be applied instead. This is not the law in Mississippi.
The well-settled law in Mississippi is that the State is neither subject to the statutes of limitations nor chargeable with the laches of its officials. Board of Education of Lamar County v. Hudson, 585 So.2d 683, 688 (Miss. 1991); Hill v. Thompson, 564 So.2d 1, 14 (Miss. 1989).
While Molden recognizes and cites these cases, he incorrectly argues that the earlier cases of City of Jackson v. Alabama & V. Ry. Co., 172 Miss. 528, 160 So. 602 (1935) and Brown v. City of Gulfport, 213 Miss 457, 57 So.2d 290 (1952) should control. The Alabama & V. Ry. Co. case held that the state and its subdivisions could be subject to the doctrine of laches "where on account of lapse of time evidence is lost." 172 Miss. at 534, 160 So. 602. Both cited cases involve a municipal government's assertion of ownership *1233 rights in certain real estate. In Alabama & V. Ry. Co., the City of Jackson sought unsuccessfully to cancel a conveyance made to the railroad. This Court was of the opinion that the evidence did not support the city's position although the Court did state that laches could apply.
Molden argues that these antagonistic views can be accounted for based on the facts peculiar to each of these cases. His contention is that this present case is most like Alabama & V. Ry. Co. Molden equates unavailable witnesses with lost evidence.
The truth is that none of the cases cited by Molden are factually similar to the case sub judice. The majority of Molden's cited cases deal with a state or city asserting its own right to certain property. In the case at bar, a department of state government is asserting a right on behalf of one of its citizens. The State's primary interest in determining the parentage of Carlos Marion stems from the need for relief from some of the financial responsibility of his support.
Molden does not contend that Carlos and his mother would also be barred under the doctrine of laches from bringing another petition to determine paternity. It would be inconsistent and anomalous to hold the doctrine of laches applicable only to the State when the State is not asserting a different right than that which could be asserted by the private litigants.
The most recent and persuasive caselaw supports the proposition that the doctrine of laches cannot apply against the State in this case. Department of Human Services is correct in its argument pertaining to this issue. The chancellor erred in dismissing with prejudice DHS's petition for paternity.

II. IF LACHES APPLIES TO THE ACTION, WHETHER THE CHANCERY COURT ERRED IN DISMISSING THE PATERNITY COMPLAINT ON THAT GROUND WHEN THE DEFENDANT FAILED TO MEET THE BURDEN OF PROVING THAT THE ALLEGED DELAY IN FILING CAUSED UNDUE PREJUDICE?
In determining whether laches can be applied the court looks to three considerations. The party seeking to invoke the doctrine of laches must show: (1) delay in asserting a right or claim, (2) the delay was not excusable, and (3) there was undue prejudice to the party against whom the claim is asserted. Allen v. Mayer, 587 So.2d 255, 260 (Miss. 1991). The question of laches is addressed to the sound discretion of the chancellor and his decision will not be overturned on appeal except where there is an abuse of discretion. Morgan v. Morgan, 431 So.2d 1119, 1121 (Miss. 1983).
DHS argues if laches did apply to this action, Molden failed to prove he suffered undue prejudice by the delay in the refiling of the paternity petition. DHS's position is that "advanced scientific testing now utilized in paternity cases makes a false declaration of paternity virtually impossible." Molden's primary argument is that there is undue prejudice to him because certain witnesses who were available at the time DHS first filed a petition are no longer available to testify. It is unclear which witnesses are not available and whether Molden sought alternative forms of proof.
Other courts which have held that laches may be applied in a paternity action have rarely allowed the defense to prevail. A mere delay in asserting the right to determine parentage has not been deemed sufficient to deprive the child of this right. DHS has cited several cases confirming this point. Molden cites nothing to the contrary.
In Wright v. Oliver, 35 Ohio St.3d 10, 517 N.E.2d 883 (1988), Oliver argued that laches applied to the paternity action because certain witnesses he would have called were no longer available. The lower court did not allow the defense and Oliver appealed.
The Ohio appeals court found that Oliver had failed to show material prejudice which would have warranted an application of laches. The Court went on to say:
While the unavailability of witnesses could possibly result in some prejudice to Oliver, he has not been materially prejudiced. The unavailable witnesses could probably comment on their observations with respect to Leatha Wright's and Oliver's relationship, *1234 but they obviously could not conclusively state that Wright and Oliver did not engage in sexual intercourse during the probable time of Andrea's conception absent twenty-four-hour-a-day contact. Furthermore, Oliver cannot claim his case has been so materially prejudiced by the passage of time as to require dismissal of the action on the basis of laches when he has available to him highly reliable, accurate and accepted scientific tests that can exclude practically all men wrongfully accused of being the father of the child.
517 N.E.2d at 885 (emphasis in the original).
Also, in Borland and the State of Utah, by and through St. Depart of Social Services v. Chandler, 733 P.2d 144 (Utah 1987), a paternity action was brought by the Department of Social Services seven years after the child's birth. Chandler appealed a jury finding that he was the father and argued that laches applied because the time lapse prevented him from producing witnesses and documents necessary to his defense.
The appeals court held that laches could be used in a paternity action, but that Chandler had not shown prejudice because certain witnesses were not available when there were other methods of proof which could be used.
Other cases in which the court has rejected similar arguments include Moody v. Christiansen, 306 N.W.2d 775 (Iowa 1981), and Doe v. Roe, 5 Haw. App. 558, 705 P.2d 535 (1985). In these cases unavailable witnesses were alleged as a basis for applying laches and the argument rejected.
As previously noted, to bar the State from pursuing this action by reason of laches and yet to allow Carlos to bring suit anytime within the statute of limitations would create a bizarre and anomalous result. The State's action is for the benefit of Carlos and involves his right of support from his father. We adopt the above mentioned case law from other jurisdictions applicable to the case sub judice.
Recently this Court in Department of Human Services v. Jones, 627 So.2d 810 (Miss. 1993), held that DHS's failure to move for an order compelling the putative fathers to submit to blood and genetic testing until the day of trial did not permit the trial judge to deny the motions for blood tests. Despite DHS's failings, this Court held that ordering the tests to establish paternity and to secure child support was consistent with the "inflexible public policy which dictates that protection of a child's best interest is a goal of utmost import in any judicial proceeding." Id. at 811. The Court concluded that this best interest of the child "as expressed in this state's policy statutes must override any concern over timeliness." Id. at 812. This same policy consideration should apply to the present case. The State's action in seeking to determine paternity and secure child support is a matter of "inflexible public policy" and the best interest of Carlos should dictate that the doctrine of laches should not be a bar to continuing this suit. A contrary result would subvert the legislative intent to have parents take responsibility for their children and to lessen the burden of the public welfare system.

CONCLUSION
The doctrine of laches cannot be applied in a paternity action brought by a state agency on behalf of a minor within the statutory period. The child in question having not yet reached the age of eighteen years, the claim is thus not barred by the applicable statute of limitations. As a matter of public policy, the "best interest of the child" outweighs whatever inconvenience the putative father may experience as a result of delay.
We are equally confident that the intent of the Mississippi legislature having enacted these statutes is to have parents take responsibility for their children, thus lessening the burden of taxpayers providing for these children through the public welfare system. In this case, Molden has not shown any undue prejudice as a result of the twelve year gap in petitions to determine paternity.
Reversed and Remanded.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., concurs in result only.