# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01064-SCT

*MISSISSIPPI DEPARTMENT*
*OF HUMAN SERVICES*
*v.*
*DOUGLAS HELTON*

09/09/99

| | |
|---|---|
| DATE OF JUDGMENT: | 05/25/95 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEBORAH KENNEDY |
| ATTORNEY FOR APPELLEE: | HELEN J. McDADE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 8/19/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The Mississippi Department of Human Services filed a paternity action against Douglas Helton on behalf of Robin Blay and the State of Florida. The petition alleged that Helton was the father of Blay's son Austin. Helton filed a motion to dismiss for lack of prosecution. The chancellor granted that motion and dismissed the petition with prejudice. The Department of Human Services has appealed.

## FACTS AND PROCEDURAL HISTORY

¶2. Austin Blay [hereinafter "Austin"] was born on September 26, 1992, in Clearwater, Florida. His mother Robin Blay ["Robin"] alleged that her son's father was Douglas Helton ["Helton"]. She claimed that she and Helton had a sexual relationship in Mississippi in December of 1991. The Mississippi Department of Human Services ["DHS"] filed the present action in the Chancery Court of Leake County on behalf of Robin under the Uniform Reciprocal Enforcement of Support Act ["URESA"]. Miss. Code Ann § 93-11-21. Robin sought an order establishing paternity and child support from Helton. Helton filed an answer denying that he was the child's father.

¶3. A prior chancellor ordered that blood tests be performed on the parties. The blood tests were conducted by Genescreen, a DNA laboratory in Dallas, Texas. Robert C. Giles, Ph.D., the laboratory director at Genescreen, submitted an affidavit which stated that Helton had been determined to be Austin's father by a probability of 99.97%.

¶4. This matter was filed on June 14, 1993. For reasons which are not revealed in the record, the court granted continuances on eleven occasions. The case was eventually set for trial on May 25, 1995. On that day Helton filed a motion to dismiss for lack of prosecution in which he cited the numerous continuances and the length of time that had passed since the matter had been filed. In the hearing on that motion, the chancellor learned that Helton had not been given the results of the blood test as is required by Miss. Code Ann. § 93-9-23(2). After a discussion on the motion to dismiss, but before reaching the merits of the case, the chancellor granted the motion to dismiss. The DHS filed a motion to set aside the judgment on March 10, 1997. The chancellor denied motion as untimely. The DHS appealed, claiming that the chancellor erroneously denied its motion to set aside the judgment.

## ANALYSIS

¶5. The chancellor dismissed this matter on May 25, 1995. The DHS filed its motion to set aside the final judgment on March 10, 1997, a year and nine months after the judgment. Miss. R. Civ. P. 60(b)(6) allows a trial court to set aside a final judgment for "any . . . reason justifying relief from the judgment." However, the motion must be made "within a reasonable time." Helton claims that the year and nine month period between the final judgment and the motion was not within a reasonable time.

¶6. Relief under Rule 60(b)(6) is available only in extraordinary and compelling circumstances. ***Briney v. U.S. Fidelity & Guar. Co.***, 714 So. 2d 962, 966 (Miss.1998). However, the Rule is a "grand reservoir of equitable power to do justice in a particular case." ***Burkett v. Burkett***, 537 So. 2d 443, 445 (Miss. 1989) (*quoting*

***Bryant, Inc. v. Walters***, 493 So. 2d 933 (Miss. 1986)).

¶7. In ***Briney***, this Court discussed the reasonableness of a motion filed three years after the judgment became final. The Court cited the following analysis from Wright and Miller's Federal Practice and Procedure:

> "What constitutes reasonable time must of necessity depend upon the facts in each individual case." [Footnote omitted.] The courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief [footnote omitted] and they consider whether the moving party had some good reason for his failure to take appropriate action sooner. [Footnote omitted.]

11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2866 (1995), *quoted in* **[Briney](#) at 967**. The facts in the matter at hand show that the DHS waited for a year and nine months to file the Rule 60(b)(6) motion. The only reasons offered for the delay were that there had been personnel changes in the Leake County DHS office and that the original attorney handling this matter for the DHS had left the Department and a new attorney unfamiliar with the case had replaced her. Ordinarily, those reasons would be completely insufficient to justify a delay of this length. But this particular case is exceptional because of the interests of the child in this matter and because Helton has not suffered any prejudice from the delay.

¶8. Protecting the best interests of a child is the paramount concern in actions to which a child is a party. ***Dept. of Human Services v. T.H.G. and L.D.G.,*** 614 So. 2d 377, 383 (Miss. 1992). It is "the goal of utmost import in any judicial proceeding." ***Dept. of Human Services v. Jones***, 627 So. 2d 810, 811 (Miss. 1993).

¶9. In ***Dept. of Human Services v. Jones***, 627 So. 2d at 810, this Court considered the failure of the DHS to file timely motions for blood testing. The Court discussed the "inflexible public policy" of protecting a child's best interests, ***id.*** at 811, and held that "protection of the children's best interests as expressed in this state's policy statutes must override any concern over timeliness." ***Id***. at 812.

¶10. We hold that under the very limited circumstances presently before the Court, it was an abuse of discretion for the chancellor to deny the motion to set aside the judgment as untimely. The best interests of the child involved required that this matter be heard.

¶11. The chancellor's decision to dismiss was based on the DHS's failure to prosecute. The order dismissing this matter mentions only the repeated continuances and the failure of the DHS to deliver a copy of the blood test results to Helton. Helton claims that there had been a decision on the merits. The record reveals otherwise. After

initially stating his intention to deny the motion and proceed to the merits, the chancellor heard further argument and apparently changed his mind. The chancellor stated "based on the delay . . . I think that this man has been mistreated." The judge concluded that "I think your rights have been violated in this case and I think, **procedurally,** you [Helton] are entitled to a dismissal." (Emphasis added.) The order, signed the same day, mentions only the numerous continuances and the failure of the DHS to serve a copy of the blood test results on Helton. The chancellor did not find that the DHS had failed to meet its burden of proof. No witnesses were called and no evidence was presented. The parties did discuss the blood test during the motion hearing, but only in the context of the failure of the DHS to serve Helton with a copy of that report. Additionally, the only motion before the court was Helton's motion to dismiss for the delays resulting from the continuances, which was filed before the hearing. It is clear that the judge's decision was procedural in nature and that there was no decision on the merits.

¶12. The dismissal for lack of prosecution was based on Mississippi Rule of Civil Procedure 41(b). This Court recently discussed the requirements for dismissal under Rule 41(b) in *American Tel. and Tel. Co. v. Days Inn*, 720 So. 2d 178 (Miss. 1998). Those requirements are a finding of contemptuous or contumacious conduct on the part of the plaintiff and a finding that lesser sanctions would not remedy the situation. *Id.* at 181. Additionally, the court should consider the following aggravating factors: "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." *Id.* (*citing* *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir.1982)). Under these standards, dismissal clearly was not warranted.

¶13. There is no indication that the conduct of the DHS attorneys was anything other than neglectful. There is nothing contemptuous or contumacious about requesting continuances. Helton never objected to the continuance requests and the chancellor granted each continuance. The judge could have denied any of the motions for continuance and proceeded to trial. Or the chancellor could have attempted lesser sanctions. Sanctions or the threat of sanctions probably would have had a great effect toward advancing this matter on the docket. Thus, neither of the two requirements has been shown.

¶14. Finally, the aggravating factors are absent. Two-year-old Austin Blay clearly was not responsible for the delays. The conduct of the DHS attorneys is not attributable to him, and he should not have to pay for their neglect. Other than a delayed decision on his paternity of Austin, Helton cannot show that he has suffered actual prejudice in this matter. This Court has held that a "mere delay in asserting the right to determine parentage" is not sufficient to deprive the child of his day in court. *Miss. Dept. of*

*Human Services v. Molden*, 644 So. 2d 1230, 1233 (Miss. 1994). Yet no evidence of any prejudice whatsoever was presented. In *Molden,* a delay of twelve years was not so prejudicial as to require dismissal. Helton's right to an adjudication was delayed for less than two years. The only real prejudice in this matter has been to the child. Finally, there has been no showing that the delay was intentional rather than negligent. The aggravating factors simply are not present.

¶15. I do not condone the performance of the DHS attorneys in this matter. The interests of Austin Blay were not diligently represented. The DHS sought continuances on eleven occasions. It took the DHS almost a year to get the blood test results, and the DHS apparently never saw that Helton received a copy of those results. Sanctions might be appropriate. But the neglectful conduct of the DHS attorneys does not justify the harsh result reached by the chancellor. Dismissal with prejudice is an extreme measure. "[D]ismissal of a litigant's suit is the toughest sanction that can be imposed upon him." *Harris v. Fort Worth Steel and Machinery, Co.*, 440 So. 2d 294, 296 (Miss. 1983). This Court has consistently held that "the law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly." *Watson v. Lillard,* 493 So. 2d 1277, 1278 (Miss. 1986). Helton failed to show that he was entitled to a dismissal under Rule 41(b). The chancellor erroneously dismissed this case, and that decision is reversed.

¶16. Additionally, as discussed above, the chancellor completely failed to take into account the best interests of the child which is the "goal of utmost import" in paternity and child support actions. *Dept. of Human Services v. Jones*, 627 So. 2d at 811. The best interest of Austin Blay in this matter was to have his paternity determined. That interest takes priority over Helton's right to a prompt adjudication of this matter. Because the preeminent concern in matters like this is the best interest of the child, the dismissal of the paternity action is reversed.

## CONCLUSION

¶17. The chancellor erred when he dismissed the paternity petition for lack of prosecution. There was no showing that the petitioners' conduct was contumacious or that lesser sanctions would not have been sufficient. Additionally, the chancellor failed to consider the best interests of the child, which were to have his paternity determined and to begin receiving child support. Finally, the taxpayers should not have to carry the child-support debts of a man whose paternity has been determined by a 99.97% probability. Accordingly, this cause is reversed and the matter is remanded to the Chancery Court of Leake County.

¶18. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J.**


**McRAE, JUSTICE, DISSENTING:**

¶19. I believe the chancellor did not abuse his discretion when he refused to set aside the judgment for the defendant. Therefore, I dissent.

¶20. The complaint in this case was filed June 14, 1993, and the chancellor granted eleven continuances before finally dismissing the case on May 25, 1995. On that date, two years after the filing of the complaint, the defendant and his attorney as well as the attorney for DHS appeared for trial. The mother of the child was not there. When the chancellor learned that the defendant had never been provided a copy of the blood test results as mandated by statute, Miss. Code Ann. § 93-9-23(2) (Supp. 1997),[1] he held that the blood test would be inadmissible and dismissed the case. During the trial, the chancellor indicated several times that he was going to reach the merits of the case and, in his ruling, the chancellor appears to have considered the plaintiff's lack of prosecution as well as the fact that, without the blood test results, there was insufficient evidence to support a finding of paternity.

¶21. The Chancellor's June 25, 1995, order denying the Plaintiff's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, For New Trial, included the following:

> All the Court had before it May 25, 1995, is the same thing we have today, which is basically two sworn statements - one from the mother and one from Mr. Helton. I didn't see then, nor do I see now, any admissible proof that would allow me to draw the conclusion that Mr. Helton is the biological father.

¶22. On March 10, 1997, **a year and nine months after** the Court dismissed the case, DHS filed a Miss. R. Civ. P. 60(b)(6) Motion to Set Aside Judgment. The Chancellor denied the motion. Needless to say, this is somewhat of a stretch under Rule 60(b)(6) for the length of time to file a motion to set aside a judgment.

¶23. To the extent that the dismissal was based on insufficient evidence, this Court, on appeal, asks whether the chancellor was manifestly wrong in finding for the defendant. *Stewart v. Merchants Nat'l Bank*, 700 So. 2d 255, 259 (Miss. 1997); *see also Taylor v. General Motors Corp.*, 717 So. 2d 747, 748 (Miss. 1998).

¶24. Here the chancellor was presented with no evidence upon which he could find

that the defendant was the child's father. Neither the State of Florida, DHS, nor Robin offered live testimony, and the blood test result was excluded as not being properly before the court. **The State presented no other evidence in support of a finding of paternity**. It had the opportunity to do so but did not. Before the court, then, were only the mother's sworn statement and Helton's sworn denial. Without more, we cannot conclude that it was manifest error to hold that DHS, the State of Florida, or the mother had not borne their burden of proof.

¶25. Rule 41(b) of the Mississippi Rules of Civil procedure provides, in pertinent part, that:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

The trial court properly disposed of this case at trial under Rule 41(b) as DHS, the State of Florida, or the mother failed to provide proper evidence. DHS put forth no case. The trial court had no choice but to involuntarily dismiss on the merits.

¶26. When confronted with the motion to set aside the judgement filed almost two years later, the Chancellor found that the motion was not filed within a reasonable time. This, too, was not error. As the majority points out, the only reasons offered by DHS for this delay were that there had been personnel changes in the offices and the attorney who had originally handled the case was no longer there. This is no more than an excuse of negligence and not a reason to hear a motion two years late in filing.

¶27. Miss. R. Civ. P. 60(b) allows a judgment to be set aside when relief is requested within a reasonable time. On appeal, the denial of Rule 60(b) relief will not be overturned unless we can say that the denial was an abuse of discretion on the part of the trial court. *See **Burkett v. Burkett***, 537 So. 2d 445-46 (Miss. 1989); *see also **Briney v. United States Fidelity & Guar. Co.**, 714 So. 2d 962, 966 (Miss. 1998)*.

¶28. In the instant case, the motion was not made until a year and nine months later. If DHS, the State of Florida, and Robin truly wanted to reverse the trial court's dismissal, they would likely have acted before a year and nine months had passed. Notwithstanding the dismissal of DHS's case against the defendant, this does not foreclose the child, Austin, from bringing his own paternity action.

¶29. The majority's opinion in this case gives certain classes of lawyers and/or litigants "certain privileges" and at least three bites at the apple. The majority has accepted evidence that is not admissible under the rules that the majority has adopted and

required the trial courts to follow.

¶30. Because I do not believe the chancellor abused his discretion in refusing to set aside the dismissal, I dissent from the majority opinion reversing and remanding this case.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

1. Miss. Code Ann. §93-9-23(2) (Supp. 1997) provides as follows:

(2) The expert or laboratory shall send all parties a copy of the report by certified mail. The expert or laboratory shall file the original report with the clerk of the court along with proof of notice to the parties. A party may challenge the testing procedure within thirty (30) days of the date of receipt or service of the notice. If either party challenges the original test results, the court shall order additional testing at the expense of the challenging party.