726 So.2d 1281 (1998)
Jerry GLASS, Appellant,
v.
Marie GLASS, Appellee.
No. 97-CA-01044 COA.
Court of Appeals of Mississippi.
December 30, 1998.
*1282 John S. Hill, William G. Armistead, Tupelo, Attorneys for Appellant.
Robbie A. Byers, Tupelo, Attorneys For Appellee.
Before McMILLIN, P.J., and HERRING and KING, JJ.
HERRING, J., for the Court:
¶ 1. Jerry Glass appeals to this Court from an Order of the Chancery Court of Lee County, Mississippi, which was rendered against him on July 26, 1997, in the amount of $7,307.50, plus attorney's fees and costs. The judgment rendered against him, finding him in contempt of court, was the result of his failure to make the child support payments required by the court's directives. We affirm.

A. THE FACTS
¶ 2. Jerry and Marie Glass obtained a divorce on July 20, 1976. During their marriage they had two children, Yolanda Glass, born April 19, 1971, and Lamond Glass, born October 25, 1974. Pursuant to the divorce decree dated July 20, 1976, the children were placed in the custody of Marie Glass, and Jerry Glass was ordered to pay child support in the amount of $30 per week, which commenced on July 23, 1976.
¶ 3. Subsequently, on August 1, 1980, Jerry Glass was found in contempt of court for failure to pay child support. Thereafter, on April 16, 1991, the Chancery Court of Lee County, Mississippi, entered an order redirecting the child support payments to the Department of Human Services (DHS). In November of 1991, Aircap Industries, the employer of Mr. Glass, began withholding *1283 child support payments and forwarding them to DHS pursuant to a withholding order entered by the Chancery Court of Lee County.
¶ 4. On January 16, 1996, Jerry Glass filed a motion for modification of the decree requiring him to make child support payments. In his motion, Mr. Glass requested that the court remove his obligation to make child support payments, due to the fact that both of his children had reached the age of majority. In her answer, Marie Glass alleged that not only was Jerry Glass not entitled to relief from making the child support payments, but he also was in contempt of court for failing to make past child support payments in the amount of $13, 541.75.[1] Mrs. Glass arrived at this figure based on a sworn schedule or accounting which she prepared with the assistance of DHS and which purported to show an arrearage in her former husband's child support payments from July, 1976, through October, 1991. The arrearage for the period from July, 1976, through October, 1991, as shown in the accounting prepared by Mrs. Glass, came to $13,850. In addition to the accounting prepared by Mrs. Glass, an affidavit of accounting was prepared by Tiffany Andrews of DHS which purported to show the arrearage in child support payments by Mr. Glass from November, 1991 to March, 1996. This accounting was combined with the accounting prepared by Mrs. Glass for the previous period, and the total arrearage in child support payments was reflected as $13,541.75. The reason for the reduction in the total amount once the affidavits were combined was the emancipation of the children during the period covered in the second accounting. Mr. Glass continued to make child support payments after the children reached majority, and the amount paid by Mr. Glass was applied to the arrearage, thereby reducing the total amount in arrears.
¶ 5. An updated affidavit of accounting prepared by DHS was presented at trial that reflected the additional time period from March 1996 to June of 1997. The updated affidavit stated the sum of the arrearage to be $10,732.50, as opposed to the previous figure of $13,541.75.[2] According to the record, DHS arrived at $10,732.50 by assuming that the original accounting prepared by Mrs. Glass (which reflected child support payments from July, 1976, through October, 1991) was accurate. DHS then applied its own calculations from that point forward.
¶ 6. Mrs. Glass testified that the sole basis of her accounting was a "piece of paper" on which she wrote down the payments by Mr. Glass over the years. She presented her notes in this regard at trial, which showed nine payments made by Mr. Glass from November 2, 1989, to November 25, 1992. She first testified that the notes she presented at trial were the only notes she had concerning the child support payments because her house had burned. However, on cross-examination she conceded that her house burned when she and Mr. Glass were still living together and that the fire had nothing to do with the loss of her notes. She testified that she could not recall whether he made the payments as shown in her notes by check or by cash, although he usually paid by check.
¶ 7. Jerry Glass presented a number of canceled checks at trial which indicated child support payments made by him to Marie Glass for which she had not given him credit. The amount of the uncredited checks totaled $710. Mrs. Glass later admitted during the course of her testimony that the payments by check in the amount of $710 had in fact been made. Mr. Glass also testified that he made his child support payments in cash about fifty percent of the time and by check fifty percent of the time. The parties stipulated that *1284 "if called, a Bank of Mississippi representative would testify that from 1989 back they could not pull microfilm checks; therefore, [at trial Mr. Glass had] microfilm checks from 1990 only." The parties chose not to obtain microfilm checks for the years following 1990 because by 1991, the trial court had directed that all child support payments should be paid to DHS, which kept accurate records of the payments.
¶ 8. Following the trial of this case, Chancellor Charles D. Thomas gave Mr. Glass a credit on his child support arrearage in the sum of $2,715, which represented the total of the amount that Mr. Glass paid in child support for Yolanda Glass after she reached the age of majority on April 19, 1992. He also gave Mr. Glass credit for the uncredited checks totaling $710, and subtracted all of these credits from the $10,732.50 arrearage claimed by DHS. The Chancellor then entered judgment for Mrs. Glass against Mr. Glass in the sum of $7,307.50. Jerry Glass now appeals to this Court.

B. THE ISSUES
¶ 9. The appellant raises the following issues on appeal which are taken verbatim from his brief:
I. WHETHER THE LOWER COURT ERRED IN BASING ITS JUDGMENT ON SPECULATIVE EVIDENCE.
II. WHETHER MARIE GLASS'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.
III. WHETHER MARIE GLASS'S CLAIM IS BARRED BY EQUITABLE DOCTRINES.

C. ANALYSIS
¶ 10. We will address each assignment of error in sequence.

STANDARD OF REVIEW
¶ 11. The standard of review employed by this Court in domestic relations cases is well settled. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the trial court's actions were manifestly wrong, or the court abused its discretion, or unless the court applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991). However, upon a finding that the decision of the chancellor was manifestly wrong or that the trial court applied an erroneous standard of law, this Court will not hesitate to reverse. Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989).

I. DID THE COURT BELOW ERR IN BASING ITS JUDGMENT ON SPECULATIVE EVIDENCE?
¶ 12. In his first assignment of error, Jerry Glass claims that the trial court erred in awarding Marie Glass past due child support payments because the court's award was based on the speculative evidence presented to the court in the form of a sworn accounting prepared by Marie Glass. He asserts that Mrs. Glass "had the burden of proof to show that Jerry Glass was in arrears." He noted that in addition to the affidavit of accounting prepared by DHS, Mrs. Glass presented evidence in the form of an affidavit which she prepared herself. Although he does not dispute the accuracy of the sworn accounting prepared by DHS, he argues that Mrs. Glass's affidavit which covers the time period from July 1976 to October 1991, is "completely speculative and wholly unreliable." To show the unreliable nature of the affidavit prepared by Mrs. Glass, Mr. Glass presented twenty-three child support checks which he delivered to Mrs. Glass from the calendar year 1990, totaling $710. Of the twenty-three checks, not one had been acknowledged in the sworn accounting presented by Mrs. Glass. The parties stipulated to the fact that, if called, a representative from the Bank of Mississippi would testify that the bank was unable to pull microfilm copies of Mr. Glass's child support checks prior to *1285 1990. Thus, the only proof either of them was able to offer of child support payments made by Mr. Glass prior to 1991 was in the form of a few original and microfilm copies of checks for the year 1990 and the notes of Mrs. Glass from which she prepared a sworn accounting. Furthermore, he argues that Mrs. Glass's credibility was called into question, which cast further doubt upon the reliability of her affidavit. Moreover, because of her overall lack of credibility and failure to present accurate records, Mr. Glass argues that Mrs. Glass did not meet her burden of proof in establishing the amount of arrearage owed by Mr. Glass.
¶ 13. According to our supreme court,
Where the husband is obligated to pay certain expenses which may vary from month to month, common sense dictates that proof of these expenses be made by the obligee. Such sums must be shown with reasonable certainty and not left to speculation or conjecture.... Manifest errors in calculation are subject to modification by this Court.
Shearer v. Shearer, 540 So.2d 9, 11 (Miss. 1989). However, the Mississippi Supreme Court has also ruled that while calculations with regard to amounts of child support arrearages may be "vague and imprecise, the chancellor's findings will not be disturbed where, as here, there was no other direct evidence as to the amount due." Brown v. Gillespie, 465 So.2d 1046, 1047 (Miss.1985). Moreover, a lower court will not be held in error "for finding the exact amount in arrears as that to which the appellant testified, there being no other direct evidence as to the amount due." Id. See also Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989).
¶ 14. In Brown, in an attempt to determine the amount of arrearage, "the [trial] court inquired if it was in the area of $6,000.00," and [the appellant] replied, "$5,000.00 I think." Brown, 465 So.2d at 1047. The court also asked the following question of the mother:
BY THE COURT: Was that before the $200.00 was paid?
A. That was before the $200.00 was paid, he paid $50.00, I guess, I suppose, on the back payments, which would make $50.00 off the $80.00, make it $5,030.00.
As stated, the court in Brown found that although the appellant was "vague and indefinite in her figures" the award would stand where there was "no other direct evidence as to the amount due." Id.
¶ 15. We find that based upon the mistakes in calculations which were brought to the attention of the trial court, the evidence of child support arrearage presented in this case was vague and indefinite to some extent. However, Mr. Glass has presented no evidence to dispute the amount of arrearage claimed by Mrs. Glass other than that $710 offered for the year 1990. She did present a sworn accounting of payments made by Mr. Glass from July, 1976 through October, 1991, based on handwritten notes which she compiled over the years. These note were allowed into evidence. Additionally, the arrearage for the time period from November, 1991 to March, 1996 was undisputed. Therefore, we follow Brown in holding that the chancellor committed no manifest error in granting a judgment to Mrs. Glass for delinquent child support payments in the sum of $7,307.50. This assignment of error is without merit.

II. IS THE CLAIM OF MARIE GLASS BARRED BY THE STATUTE OF LIMITATIONS?
¶ 16. In his second assignment of error, Jerry Glass argues that his former wife's claim for delinquent child support payments is barred by the statute of limitations found in Mississippi Code Annotated § 15-1-43 (Rev.1995), which states as follows:
§ 15-1-43. Limitations applicable to actions founded on domestic judgments or decrees.
All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven years next after the rendition of such judgment or decree, and not after, and an *1286 execution shall not issue on any judgment or decree after seven years from the date of the judgment or decree.
However, the Mississippi Supreme Court in Wilson v. Wilson, 464 So.2d 496, 498 (Miss. 1985), clearly held that this seven year statute of limitations does not apply to child support payments. The court in Wilson held that the code section that governs child support is Mississippi Code Annotated § 15-1-59 (Rev.1995), which states as follows:
§ 15-1-59. Saving in favor of persons under disabilities.
If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one years.
Wilson v. Wilson, 464 So.2d 496, 498 (Miss. 1985).
¶ 17. Therefore, as the Mississippi Supreme Court ruled in Vice v. Dep't of Human Servs., State of Miss., 702 So.2d 397, 400 (Miss.1997), "where a minor holds the legal right, such as to child support from a parent, the statute of limitations does not begin to run until the disability of minority is removed." Moreover, it would "defy reason" to allow the statute of limitations to run during the child's disability of minority. Id.
¶ 18. In his reply brief, Mr. Glass argues that only the emancipated child, and not the former custodial parent, may bring an action for past due child support payments. However, the Mississippi Supreme Court has ruled the opposite:
Either the child or the former custodial parent may bring an action against the defaulting parent, although the latter receives any recovery in his/her continuing fiduciary capacity subject to all of the duties and strictures thereof. If by reason of the supporting parent's default, the custodial parent is forced to dip into her own resources beyond what would otherwise be expected of her, she may recover and retain amounts so proved, subject to equitable adjustment should the child's prior needs so suggest.
Vice, 702 So.2d at 401.
¶ 19. Marie Glass filed her counterclaim against Jerry Glass for past due payments due to both of their children on March 19, 1996. Their eldest child, Yolanda, became emancipated upon her twenty-first birthday on April 19, 1992. Thus, the statute of limitations did not apply to the claim filed by Mrs. Glass on behalf of her children. This assignment of error is without merit.

III. IS THE CLAIM OF MARIE GLASS BARRED BY THE EQUITABLE DOCTRINES OF LACHES, EQUITABLE ESTOPPEL AND/OR WAIVER?
¶ 20. For his third assignment of error, Jerry Glass advances the argument that the doctrines of laches, equitable estoppel and/or waiver should have been applied to his former wife's claim against him for delinquent child support payments. Mr. Glass notes that the original contempt order was entered on August 1, 1980. He argues that "[i]t is completely inequitable to require or expect [him] to go back and reconstruct with direct evidence that exact amount of child support payments he made over this substantial period of time."

A. Laches
¶ 21. Mr. Glass argues that because Mrs. Glass waited almost sixteen years to bring this second action for contempt of court, the doctrine of laches bars her claim to the past due child support payments. Due to her delay in bringing this action, Jerry Glass was unable to obtain banking records prior to 1990, which would have aided him in defending his position that he had paid much of the claimed arrearage. Mr. Glass argues that if Mrs. Glass had brought this contempt action *1287 sooner, he would have been in a much better position to rebut her allegations of past due child support.
¶ 22. The question before this Court is whether the trial court erred in refusing to apply the doctrine of laches to the case sub judice. "The question of laches is addressed to the sound discretion of the chancellor and his decision will not be overturned on appeal except where there is an abuse of discretion." Miss. Dept. of Human Servs. v. Molden, 644 So.2d 1230, 1233 (Miss.1994). The party seeking to invoke the defense of laches must show that the "delay has resulted to his injury and that it would be inequitable to sustain the suit." Sullivan v. McCallum, 231 So.2d 801, 802 (Miss.1970). Moreover, "the question of laches [is] essentially a question of fact for the trial court...." Lee v. Duncan, 220 Miss. 234, 242, 70 So.2d 615, 619 (1954).
¶ 23. The Mississippi Supreme Court has recently explained that laches is an equitable doctrine which was set forth as a rule of law in Comans v. Tapley, 101 Miss. 203, 57 So. 567 (1911):
The doctrine of laches is founded principally upon the equity maxims "He who seeks equity must do equity," "He who comes into equity must come with clean hands," and "The laws serve the vigilant, and not those who sleep over their rights."
...
Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right then be enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.
Grant v. State, 686 So.2d 1078, 1089 (Miss. 1996) (quoting Comans, 101 Miss. 203, 57 So. 567) (internal citations omitted).
In determining whether laches can be applied the court looks to three considerations. The party seeking to invoke the doctrine of laches must show: (1) delay in asserting a right or claim, (2) the delay was not excusable, and (3) there was undue prejudice to the party against whom the claim is asserted.
Id. However, "[d]elay is not laches unless it results in hardship to another." Merchants & Farmers Bank v. State, 651 So.2d 1060, 1063 (Miss.1995) (quotingClement v. R.L. Burns Corp., 373 So.2d 790, 797 (Miss.1979)).
¶ 24. In the present case, we rule that the trial court did not abuse its discretion in concluding that Mr. Glass had failed to present sufficient evidence that the affirmative defense of laches was applicable to bar his former wife's claim to the alleged arrearage in child support payments. We reach this conclusion after careful consideration of the three factors required to bar a claim under the doctrine of laches.

1. Delay in asserting a right or claim.

¶ 25. There is no doubt that Mrs. Glass was dilatory in her pursuit of this claim. Mr. Glass was first found in contempt of court on August 1, 1980. It was not until March 19, 1996, that Mrs. Glass filed the countersuit which is the subject of this action.

2. The delay was not excusable.

¶ 26. Due to the fact that Mrs. Glass asserts no reason or excuse for her failure to bring this claim in a timely manner, we must find that her delay was inexcusable.

3. Undue prejudice to the party against whom the claim is asserted.

¶ 27. Mr. Glass was aware at all times that Mrs. Glass was trying to collect the child support payments that he owed her children. At no time did she intimate that she was forgiving him his obligation or even that she was able to get by without the payments. Her testimony, as well as that of Yolanda Glass, her daughter, showed that she continued to beg Mr. Glass to be forthcoming with the child support payments that she needed *1288 to support their children. Because she never allowed Mr. Glass to rely to his detriment on a statement that she was forgiving him his obligation, we find that no prejudice was suffered by Mr. Glass.
¶ 28. As discussed above, "[child] support obligations vest in the child as they accrue, and no court may thereafter modify or forgive them if they be not paid. The only defense to an action therefor is payment." Varner, 588 So.2d at 432-33 (citations omitted). The supreme court has concluded that "[t]o allow the statute of limitations to run during the disability of the minor, the very period through which the minor needs and is entitled to the support of his parents, would defy reason." Wilson v. Wilson, 464 So.2d 496, 499 (Miss.1985). Moreover, the doctrine of laches does not apply when a claim has not been barred by the statute of limitations. Miss. Dept. of Human Servs. v. Molden, 644 So.2d 1230, 1232 (Miss.1994). We rule that the trial court did not abuse its discretion in refusing the appellant's defense of laches to bar his former wife's recovery of past due child support payments in the amount of $7,307.50, plus attorney's fees and costs.

B. Equitable Estoppel
¶ 29. Mr. Glass asserts that the claim of Mrs. Glass should be barred by the defense of equitable estoppel. As stated by Mr. Glass in his brief to this Court, the elements supporting a claim of equitable estoppel are as follows:
Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence. The burden of establishing the elements of an estoppel is on the party asserting the estoppel. The existence of the elements of an estoppel must be established by the preponderance of the evidence.
Chapman v. Chapman, 473 So.2d 467, 470 (Miss.1985).
¶ 30. As stated above, Mrs. Glass and her daughter, Yolanda, both testified that Mrs. Glass continuously begged Mr. Glass to fulfill his obligation to make child support payments. There is nothing in the record that would indicate that Mrs. Glass concealed material facts or made any representation other than the fact that she and her children were suffering because of Mr. Glass's nonpayment. Therefore, the argument that her claim should be barred due to equitable estoppel is without merit.

C. Waiver
¶ 31. Finally, Mr. Glass states that his former wife's claim should be barred due to the equitable defense of waiver. However, he makes no argument to support this contention. He cites a case from the United States Court of Appeals for the Fifth Circuit, Pitts v. American Sec. Life, 931 F.2d 351, 357 (5th Cir.1991), which defined the essential element of waiver as the "voluntary or intentional relinquishment of a known right."
¶ 32. We find no known right to have been relinquished by Mrs. Glass in this case. Since Mr. Glass advances no other argument in support of this assignment of error, we will address this assertion no further. This assignment of error is without merit.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
NOTES
[1] It is noteworthy that at the time Marie Glass filed her answer and counterclaim, her children, Yolanda and Lamond, were 25 and 21 years old, respectively. Yolanda Glass reached majority on April 19, 1992, and her younger brother followed on October 25, 1995.
[2] The updated accounting reflects the process whereby DHS applied child support payments made by Mr. Glass for the period from March, 1996 to June, 1997, (which was after the children had both reached majority) to the arrearage, thereby reducing the total arrearage to $10,732.50.